

NUMBER 13-09-00226-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

SAN PEDRO IMPULSORA DE INMUEBLES
ESPECIALES, S.A. DE C.V.,                                              Appellant,

v.

RAQUEL VILLARREAL, INDIVIDUALLY AND AS
GUARDIAN OF THE PERSON AND ESTATE
OF RAQUEL CANTU DE VILLARREAL, MARCELO
VILLARREAL, AND CARLOS VILLARREAL,                      Appellees.

---

On appeal from the 404th District Court
of Cameron County, Texas.

---

# OPINION

**Before Justices Yañez, Rodriguez, and Garza**
**Opinion by Justice Rodriguez**

San Pedro Impulsora de Inmuebles Especiales, S.A. de C.V. ("San Pedro

Impulsora") appeals the trial court's denial of its special appearance. San Pedro Impulsora

raises two issues, through which it argues that: (1) the trial court considered inadmissible evidence in determining that it had jurisdiction over San Pedro Impulsora; and (2) San Pedro Impulsora has no minimum contacts with Texas and is not subject to jurisdiction here. We affirm.

## I. BACKGROUND

The underlying dispute arises from a series of acrimonious legal proceedings among the seven adult children of Raquel Cantu de Villarreal ("Doña Raquel").[1] Doña Raquel, a wealthy, elderly widow, became incapacitated and her children began fighting over her custody, guardianship, and sizeable estate in a series of Machiavellian legal skirmishes that make the Hatfield-McCoy feud seem like a kindergarten brawl.

In this lawsuit, Raquel Villarreal, individually and as guardian of the person and estate of Doña Raquel, and two of her siblings, Marcelo Villarreal and Carlos Villarreal,

---

[1] *See In the Guardianship of Raquel Cantu de Villarreal*, No. 13-08-00708-CV, 2010 Tex. App. LEXIS ___ (Tex. App.–Corpus Christi Nov. 18, 2010, no pet. h.) (affirming an order confirming an arbitration award following litigation between the children); *In re de Villarreal*, No. 13-08-00408-CV, 2009 Tex. App. LEXIS 2249, at *11-12 (Tex. App.–Corpus Christi Apr. 2, 2009, pet. denied) (mem. op.) (affirming in part and dismissing in part the appeal of children Ignacio, Consuelo, Fernando, and Martha attacking two post-judgment orders enforcing the trial court's judgment and issuing writs of attachment); *In re Cantu*, No. 13-08-00682-CV, 2009 Tex. App. LEXIS 2241, at *1-2 (Tex. App.–Corpus Christi Apr. 2, 2009, orig. proceeding [mand. denied]) (mem. op.) (denying a petition for writ of mandamus filed by Consuelo contending that the trial court failed to satisfy "the mandatory and jurisdictional notice requirements of the Texas Probate Code" because it held an initial guardianship hearing and appointed a temporary guardian "without giving the proposed ward prior notice as required by section 875 of the Texas Probate Code"); *In re de Villarreal*, No. 13-08-00707-CV, 2009 Tex. App. LEXIS 2233, at *1 (Tex. App.–Corpus Christi Apr. 2, 2009, no pet.) (per curiam) (mem. op.) (dismissing Ignacio's appeal of an order removing him as guardian of the person of Doña Raquel); *In re Cantu*, No. 13-08-00437-CV, 2008 Tex. App. LEXIS 5795, at *1-2 (Tex. App.–Corpus Christi July 30, 2008, orig. proceeding [mand. denied]) (mem. op.) (denying the petition for writ of mandamus filed by Ignacio, Fernando, Consuelo, and Martha seeking to compel the trial court to vacate various orders pertaining to the guardianship of Doña Raquel).

By motion, appellees requested that this Court take judicial notice of filings in prior proceedings in this court in appellate cause numbers 13-08-00408-CV, 13-08-00707-CV, 13-08-00708-CV, 13-08-00437-CV, and 13-08-00682-CV. We granted the motion. *See Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.–Fort Worth 2004, pet. denied) (holding that a court may take judicial notice of its own files, but it cannot take judicial notice of the truth of any allegations contained in its records).

brought suit against Lone Star National Bancshares-Texas, Inc. ("Lone Star"), San Pedro Impulsora, Ignacio Villarreal, Fernando Villarreal, Consuelo Villarreal, and Martha Villarreal, alleging generally that Ignacio, Fernando, Consuelo, and Martha ("the Villarreal defendants"), and San Pedro Impulsora improperly converted funds belonging to Doña Raquel and placed $2.7 million dollars of her funds in San Pedro Impulsora's bank account with Lone Star in Brownsville, Texas. The plaintiffs sought a temporary restraining order and temporary injunction to prevent Lone Star from releasing the funds to San Pedro Impulsora or the Villarreal defendants. The plaintiffs alleged different causes of action against specific groups of defendants; causes of action pleaded against San Pedro Impulsora include conversion, fraudulent transfer, and conspiracy.[2]

The plaintiffs' petition in this lawsuit includes an in-depth factual history of the dispute and chronicles previous legal proceedings between the children in trial court cause number 2007-CGC-041-B in County Court at Law Number Two of Cameron County, Texas. In that cause, the parties litigated matters pertaining to guardianships for the person and estate of Doña Raquel and ownership of her assets. Ultimately, all of the children participated in an "Irrevocable Family Settlement Agreement, Assignment, and Release and Rule 11 Agreement," which purported to settle all claims between them regarding their mother's person and property. The agreement was approved and

[2] We note that conspiracy as an independent basis for jurisdiction has been criticized as distracting from the ultimate due process inquiry regarding whether the defendant's contact with the forum was such that it should reasonably anticipate being haled into a court in the forum state. *See Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995). Thus, the Texas Supreme Court has declined to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state. *Id.*; *Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 10 (Tex. App.–San Antonio 2004, pet. denied); *Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 671 (Tex. App.–Fort Worth 2001, no pet.); *see also Lonza AG v. Blum*, 70 S.W.3d 184, 192 (Tex. App.–San Antonio 2001, pet. denied). In this case, however, the assertion of personal jurisdiction is not based solely on the alleged conspiracy.

3

incorporated into a judgment rendered in that court. Following disputes over implementation of the agreement, the trial court referred the matter to arbitration and ultimately entered judgment approving the arbitration award.

In the instant proceeding, the plaintiffs' first amended petition alleges that jurisdiction over San Pedro Impulsora is proper because San Pedro purposefully availed itself of conducting activities in Texas and committed a tort in Texas:

> This court has personal jurisdiction over Defendants in that 1) Defendants purposefully availed [themselves] of conducting activities in Texas; and 2) the causes of action asserted herein arise from or are related to those contacts or activities. Jurisdiction over Defendants comports with traditional notions of fair play and substantial justice. Specifically, Defendants . . . availed themselves of conducting activities in Texas in order to perpetuate and complete a fraud upon [Doña Raquel], a resident Ward of a Cameron County Probate Court. Furthermore, Defendants availed themselves of Texas by fraudulently transferring assets to Texas with the actual intent to hinder, delay, or defraud [Doña Raquel], and without receiving a reasonable equivalent value in exchange for the transfer to Texas. TEX. BUS. & COM. CODE Section 24.001 *et seq.* Defendants brought [Doña Raquel] to Texas and opened an account in Defendant Lone Star National Bank, depositing her money in said Bank, in order to complete the fraud upon her. Finally, Defendant [San Pedro Impulsora] was created for the sole purpose of buying and selling land in Texas for the benefit of [Doña Raquel]. Defendant [San Pedro Impulsora] did buy and sell land in Texas for the benefit of [Doña Raquel].

> . . . .

> On September 19, 2006, Defendants induced their mother to sign an *impresa*[3] falsely stating she owed 70 million pesos to a corporation, [San Pedro Impulsora]. [San Pedro Impulsora] is a Mexican corporation that was created at the direction of [Doña Raquel] to hold title to a home that she had in Brownsville, Texas. Other than the house, it had no assets, engaged in no business, had no employees or place of business and simply operated as a shell to hold title to the house in the United States. Doña Raquel is the owner of the corporation, holding 99 percent of the shares, with Defendant Ignacio Villarreal holding 1 percent. Defendant Ignacio Villarreal was the

---

[3] The parties have generally defined an *impresa* as a promissory note.

4

sole "administrator"[4] of this company and controlled it.

Defendants then initiated a *subterfugio* (i.e., sham), lawsuit against their mother in Mexico. They got their mother to confess to a 70 million peso judgment against Doña Raquel in favor of [San Pedro Impulsora]. The purpose of this sham lawsuit was to seize control over all their mother's property and money. The money which [they] sought to obtain through this sham lawsuit included 34 million pesos and $2.7 million, in two separate accounts. Applying the conversion rate at the time of the sham lawsuit, the total of the two accounts was roughly 70 million pesos. The only funds, however, obtained through the sham lawsuit were the 34 million pesos.

Defendant Ignacio Villarreal has repeatedly testified that this 34 million pesos is his mother's money.

At approximately the same time, Defendants obtained the signature of their mother to withdraw the $2.7 million from her . . . account in a Mexican bank and eventually transferred the $2.7 million from Mexico to an account at Defendant Lone Star National Bank in the Rio Grande Valley in the name of [San Pedro Impulsora]. At the time that Defendants obtained [Doña Raquel's] signature, she did not have the mental capacity to execute any documents. Defendant Ignacio previously testified he did this to avoid the jurisdiction of courts in Mexico, although he [continued] to acknowledge that this money belonged to his mother. However, only, he could sign on this account. Even his mother did not have authority to sign on the account.

. . . .

Defendant Ignacio Villarreal, without following any of the formalities required under Mexican law, including allowing his mother to vote her 99% interest in the stock of the company, removed himself and appointed a Hector Garza Salas as the administrator of [San Pedro Impulsora]. Defendant Ignacio Villarreal testified that he had never met Hector Garza Salas before he appointed him to be this administrator of this company now worth over $6 million, didn't know his qualifications, and didn't know much about him. Plaintiffs would show that Hector Garza Salas is not in fact the administrator and that [San Pedro Impulsora] is in fact controlled by Defendant Ignacio Villarreal and the other IVC Camp defendants and that if said funds are released to the custody of any alleged administrator of said company said funds will be stolen by said Defendants as have all other property belonging to [Doña Raquel.]

_____

[4] According to argument presented at the hearing on the special appearance, an "*administrator*" is similar to the chief executive officer or president of a corporation.

5

To briefly summarize some of the other pertinent allegations in the petition: Marcelo and Raquel instituted legal proceedings in Mexico to protect their mother's property rights, and consequently, Doña Raquel's bank account in Mexico containing 34 million pesos was frozen by court order; the Villarreal defendants secretly moved Doña Raquel to Texas "to subvert the authority of courts in Mexico" and induced her to sign over all of her property to them; and criminal proceedings were instituted against Ignacio in Mexico for Doña Raquel's kidnapping and the theft of her property. After locating their mother in Texas, the plaintiffs instituted the legal proceedings previously referenced in Cameron County.

In response to these allegations, San Pedro Impulsora filed a special appearance and an original answer subject to the special appearance.[5] The facts adduced by San Pedro Impulsora pursuant to its verified special appearance include: San Pedro Impulsora is a Mexican corporation, incorporated on September 23, 2003, duly organized and existing under Mexican law; San Pedro Impulsora is a nonresident of Texas and conducts no business in Texas; San Pedro Impulsora is not and has never been a resident of Texas, nor does it now or has it ever maintained a registered agent for service in Texas; San Pedro Impulsora has never maintained an office or mailing address in Texas; San Pedro Impulsora has never maintained any telephone, facsimile, or other communication facilities of any kind in Texas; San Pedro Impulsora has no employees, representatives, officers, directors, or agents conducting business within Texas; San Pedro Impulsora does not own, lease, rent, or control any real property in Texas; other than maintaining an account at Lone Star, San Pedro Impulsora does not perform or solicit business in Texas, contract

---

[5] San Pedro Impulsora's original special appearance was unverified; however, San Pedro Impulsora later filed, with leave of court, a verification for its special appearance.

6

with Texas residents, or enter into contracts performable in Texas; San Pedro Impulsora does not and has never advertised or marketed in Texas; San Pedro Impulsora has never held a board of directors, officers, or other official meeting in Texas; San Pedro Impulsora's records that may be relevant to this case are located in Mexico; and San Pedro Impulsora has never been licensed to do business in Texas.

According to San Pedro Impulsora, the "only present connection [San Pedro Impulsora] currently has to Texas, and the only connection with Texas alleged by Plaintiffs, is that [San Pedro Impulsora] owns a bank account at Lone Star." San Pedro Impulsora thus alleges that a Texas court cannot exercise jurisdiction over it because "Texas courts have repeatedly held that the existence of a Texas bank account alone is insufficient to confer general jurisdiction."[6] By separate motion, San Pedro Impulsora further requested that the trial court take judicial notice of Mexican law regarding corporations in Mexico.[7]

The trial court held an evidentiary hearing on the special appearance. In support of its special appearance, San Pedro Impulsora introduced two sets of official Mexican

---

[6] We note that the cases San Pedro Impulsora cites for this proposition analyze the existence of Texas bank accounts in the context of general jurisdiction rather than specific jurisdiction based on a dispute involving the bank account itself. *See, e.g., Primera Vista S.P.R. de R.L. v. Banca Serfin S.A.*, 974 S.W.2d 918, 926 (Tex. App.–El Paso 1998, no pet.).

[7] According to San Pedro Impulsora's "Request to Take Judicial Notice of Mexican Law Subject to Special Appearance":

> Although Texas law may disregard the corporate entity under certain circumstances, and may also impose liability on a corporation for *ultra vires* acts, Mexican law does not recognize any such theories. Because the law of Mexico differs from Texas law in these areas, it is necessary to apply Mexican corporation law with respect to Plaintiffs' claims.

(Internal citations omitted.) According to the request, San Pedro Impulsora planned to introduce expert testimony at the hearing on the special appearance regarding Mexican law; however no such evidence was introduced. San Pedro Impulsora has not raised an issue on appeal regarding any error in failing to take judicial notice. *See Pennwell Corp. v. Ken. Assocs.*, 123 S.W.3d 756, 760-61 (Tex. App.–Houston [14th Dist.] 2003, pet. denied) (stating that the failure to provide adequate proof of foreign law results in a presumption that the law of the foreign jurisdiction is identical to that of Texas); *see also* TEX. R. EVID. 203.

7

documents, which were not translated for the record.[8]  According to the stipulated facts,

however, these documents show that San Pedro Impulsora was formed as a Mexican

corporation on September 23, 2003, that it was registered in the public registry in Mexico

on October 27, 2003, and that at the time of its formation, its *administrator* was Ignacio

Villarreal.  The documents further indicate that on February 19, 2007, Hector Garza Salas

was appointed as *administrator* of San Pedro Impulsora, the change of *administrator* was

notarized on May 31, 2007, and the change was filed in the public registry on June 1, 2007,

and registered on June 6, 2007.  San Pedro Impulsora also introduced a docket sheet from

trial court cause number 2007-CGC-041-B, *In the Guardianship of Raquel Cantu de*

*Villarreal*, in County Court at Law Number Two of Cameron County, Texas, in order to

illustrate that it was not made a party to that action.  San Pedro Impulsora produced no

other evidence, testimonial or otherwise, in support of its special appearance.

Plaintiffs, in turn, introduced into evidence the deposition testimony of Ignacio taken

in trial court cause number 2007-CGC-041-B, with several of the exhibits to that deposition,

including various banking statements and a check from Sierra Title Company to San Pedro

Impulsora for $478,693.32, representing the sale of Doña Raquel's home in Texas.

Plaintiffs also introduced a cash warranty deed evidencing San Pedro Impulsora's

purchase of property in Brownsville, Texas on October 1, 2003 and several orders issued

in cause number 2007-CGC-041-B, including orders approving the "Irrevocable Family

Settlement Agreement, Assignment, and Release and Rule 11 Agreement" and confirming

---

[8] Both plaintiffs and San Pedro Impulsora offered and utilized foreign language documents at the hearing on the special appearance; however, none of the documents were officially translated for the record. Neither plaintiffs nor San Pedro Impulsora objected to the rough translations offered by counsel in argument at the hearing.  *See generally* TEX. R. EVID. 1009.

the arbitration award. As will be discussed in more detail herein, San Pedro Impulsora objected to the majority of these exhibits on grounds of relevance, hearsay, or lack of authentication.

Plaintiffs also produced live testimony from an attorney, Miguel Angel Abramo Martinez, who represented Marcelo and Raquel in the above-referenced legal proceedings in Mexico. According to Abramo, San Pedro Impulsora, utilizing the promissory note signed by Doña Raquel, had attempted to seize one of Doña Raquel's bank accounts. Marcelo and Raquel, who were authorized jointly on that account, filed an *amparo*[9] to prevent San Pedro Impulsora from withdrawing the money. Subsequently, however, the children resolved their claims against each other and entered into the irrevocable settlement agreement. Abramo testified that he was present when the children executed the settlement agreement in Texas. Abramo testified that attorney Carlos Eugenio Lugo Morales, who represents Ignacio, Fernando, Martha, Consuelo, and San Pedro Impulsora, was also present in Texas at the execution of the agreement.

Abramo testified that Marcelo and Raquel had to dismiss the *amparo* in order to comply with the settlement agreement. Dismissing the *amparo* would allow 34 million pesos to be released from the registry of the court in Mexico and utilized as per the agreement.

Abramo represented Marcelo and Raquel in dismissing the *amparo*. Abramo discussed the document of dismissal, which was not translated but was introduced into evidence. Abramo testified that Lugo cooperated in dismissing the action; that Lugo

---

[9] According to the parties, an *amparo* is a specific type of lawsuit in Mexico.

9

executed the dismissal in order to comply with the agreement and in order for the funds to be released; and that Lugo was representing San Pedro Impulsora in so doing. Abramo examined Lugo's signature on the dismissal and stated that the dismissal recites that Lugo's signature thereon is "authorized by San Pedro Impulsora."

The trial court denied San Pedro Impulsora's special appearance:

> Came on for consideration the special appearance filed by Defendant [San Pedro Impulsora], and the supplement thereto filed with leave of Court by [San Pedro Impulsora]. After having considered [San Pedro Impulsora's] special appearance, as supplemented; the evidence presented by Plaintiffs and [San Pedro Impulsora] during a hearing the Court conducted on March 13, 2009; supplemental objections to the evidence presented by Plaintiffs during the hearing filed with leave of Court by [San Pedro Impulsora] (all of the supplemental objections are hereby overruled); stipulations of fact made by counsel during the hearing; and arguments of counsel, the Court concludes that [San Pedro Impulsora's] special appearance should be, and is hereby, DENIED because [San Pedro Impulsora] has minimum contacts with the State of Texas.

The trial court did not enter findings of fact or conclusions of law. This appeal ensued. San Pedro Impulsora raises two issues through which it argues that the trial court erred in the admission of evidence and that San Pedro Impulsora lacks minimum contacts with Texas. According to San Pedro Impulsora:

> [San Pedro Impulsora] has only one contact with Texas: a bank account with Lone Star. This sole contact cannot support specific or general jurisdiction. The Plaintiffs' conversion and fraudulent-transfer claims do not arise out of this contact, because all of the alleged operative facts for these claims took place in Mexico.

## II. JURISDICTION

A Texas court may exercise personal jurisdiction over a nonresident defendant only if jurisdiction is authorized by the Texas long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 2008). The Texas "long-arm statute," which permits Texas

10

courts to exercise personal jurisdiction over nonresident defendants who do business in Texas, provides as follows:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1)  contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2)  commits a tort in whole or in part in this state; or
>
> (3)  recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

*Id.* Although the Texas long-arm statute lists activities that constitute "doing business," this list is not exclusive, and "section 17.042's broad language extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (quoting *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). The Due Process Clause of the Fourteenth Amendment allows a Texas court to exercise personal jurisdiction over a nonresident defendant when (1) the nonresident defendant has established minimum contacts with Texas, and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *BMC Software*, 83 S.W.3d at 795; *see* U.S. CONST. amend. XIV, § 1; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) ("The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'") (quoting *Int'l Shoe*, 326 U.S. at 319).

11

## A. Minimum Contacts

A nonresident establishes minimum contacts with Texas by purposefully availing itself of the privileges and benefits inherent in conducting business in the state. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575, 578 (Tex. 2007); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) ("For half a century, the touchstone of jurisdictional due process has been 'purposeful availment.'"). There are at least three aspects of our inquiry regarding purposeful availment. *Moki Mac*, 221 S.W.3d at 575. First, we consider only the nonresident defendant's contacts with the forum state and do not consider the acts of a third person or another party. *Michiana*, 168 S.W.3d at 785. Second, the nonresident defendant's contacts with the forum state must be purposeful and not "random, isolated, or fortuitous." *Id.* Finally, the nonresident defendant must have sought "some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Moki Mac*, 221 S.W.3d at 578 (quoting *Michiana*, 168 S.W.3d at 785).

A nonresident defendant's contacts with the forum state may create either specific or general jurisdiction. *Id.* at 575. Specific jurisdiction exists if the nonresident defendant purposefully directed his activities at a resident of Texas and the litigation arose from or related to those contacts. *Id.* at 572-73. In other words, there must be a substantial connection between the nonresident defendant's contacts and the operative facts of the litigation. *Id.* at 585. In contrast, general jurisdiction exists when the defendant's contacts in the forum are continuous and systematic; therefore, the forum may exercise personal jurisdiction over the nonresident defendant "even if the cause of action did not arise from or relate to activities conducted within the forum state." *BMC Software*, 83 S.W.3d at 796.

## B. Fair Play and Substantial Justice

Even if minimum contacts are present, a trial court may not exercise personal jurisdiction over a nonresident defendant if it would offend traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 113 (1987); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). The catchphrase "traditional notions of fair play and substantial justice" is a "hallmark" of personal jurisdiction. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010).

Whether the court's exercise of personal jurisdiction over a nonresident defendant meets this requirement depends on several factors, including: (1) "the burden on the defendant"; (2) "the interests of the forum state in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; (4) the interstate or international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations or states in furthering fundamental substantive social policies. *Spir Star AG*, 310 S.W.3d at 878 (citing and quoting *Guardian Royal*, 815 S.W.2d at 231). "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Guardian Royal*, 815 S.W.2d at 231.

## III. Standard of Review

We begin with the presumption that the court has jurisdiction over the parties. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985); *Angelou v. African*

13

*Overseas Union*, 33 S.W.3d 269, 277 (Tex. App.–Houston [14th Dist.] 2000, no pet.). The plaintiff bears the initial burden of pleading "sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute." *BMC Software*, 83 S.W.3d at 793. In conducting our review, we accept as true the allegations in the petition. *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.–Houston [1st Dist.] 2010, no pet.); *Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 839 (Tex. App.–Houston [14th Dist.] 2008, pet. denied).

When a special appearance is filed, the nonresident defendant assumes the burden of negating all bases of personal jurisdiction asserted by the plaintiff. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 793; *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V.*, 82 S.W.3d 622, 628 (Tex. App.–Corpus Christi 2002, pet. dism'd w.o.j.). "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). "The defendant can negate jurisdiction on either a factual or legal basis." *Id.* at 659. In a factual challenge, the defendant presents evidence that it has no contacts with Texas to disprove the plaintiff's allegations. *Id.* The plaintiff then presents evidence that affirms its allegations and risks dismissal if it cannot present evidence supporting the allegations of jurisdiction. *Id.* In contrast, in a legal challenge, the defendant asserts that even if the plaintiff's allegations are true, the evidence is legally insufficient to establish jurisdiction. *Id.* at 659.

The trial court determines the special appearance by referring to the pleadings, any stipulations made by and between the parties, any affidavits and attachments filed by the parties, discovery, and any oral testimony. *See* TEX. R. CIV. P. 120a(3). Whether the trial court has personal jurisdiction over a defendant is a question of law that this Court reviews de novo. *Kelly*, 301 S.W.3d at 657; *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 794. When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, we infer all facts necessary to support the judgment and supported by the evidence. *Kelly*, 301 S.W.3d at 657; *Moki Mac*, 221 S.W.3d at 574.

## IV. ANALYSIS

Plaintiffs contend that San Pedro Impulsora is subject to specific jurisdiction, which is established if its alleged liability arises from or is related to an activity conducted within the forum. *See BMC Software*, 83 S.W.3d at 796. Thus, for a Texas court to properly exercise specific jurisdiction over San Pedro Impulsora in the present case, (1) San Pedro Impulsora must have made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities here, and (2) its contacts with Texas must be substantially connected to the operative facts of this litigation. *See Moki Mac*, 221 S.W.3d at 576, 585. If both of these requirements are met, we then must determine if the exercise of specific jurisdiction over San Pedro Impulsora comports with "traditional notions of fair play and substantial justice." *Id.* at 575 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Although allegations that a tort was committed in Texas satisfy the Texas long-arm statute, such allegations alone are not sufficient to satisfy the purposeful availment requirement of the

15

due process minimum contacts analysis. *Michiana*, 168 S.W.3d at 788-92. Rather than focusing on whether San Pedro Impulsora directed a tort toward Texas,[10] which improperly focuses on the merits of the lawsuit rather than San Pedro Impulsora's contacts with Texas, we instead examine San Pedro Impulsora's conduct and connection with Texas as the critical inquiries. *See id.*

### A. MINIMUM CONTACTS

We begin by examining the bases for jurisdiction alleged by plaintiffs, but uncontradicted by San Pedro Impulsora. Stated otherwise, for purposes of determining whether San Pedro Impulsora's liability arises from or relates to the forum contacts, we take the plaintiffs' pleading and allegations as true and focus our analysis on the relationship among the defendant, the forum, and the litigation. *Moki Mac*, 221 S.W.3d at 582. We consider the claims involved in the litigation to determine the operative facts. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009). We look for a "substantial connection between [the defendant's forum] contacts and the operative facts of the litigation." *Id.* at 340; *Moki Mac*, 221 S.W.3d at 585.

Plaintiffs alleged that San Pedro Impulsora is a Mexican corporation that "was created for the sole purpose of buying and selling land in Texas for the benefit of [Doña Raquel]," who is a "resident Ward of a Cameron County Probate Court," and that San Pedro Impulsora "did buy and sell land in Texas for the benefit of [Doña Raquel]." Plaintiffs further alleged that San Pedro Impulsora was created at the direction of Doña Raquel to

---

[10] The Texas Supreme Court has emphasized that our analysis should not be driven by the plaintiff's pleadings because such an approach shifts focus from the relationship between the defendant, the forum, and the litigation to the relationship between the plaintiff, the forum, and the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 583 (Tex. 2007).

hold title to a home that she had in Brownsville, Texas, and, other than that property, it had no assets, engaged in no business, had no employees or place of business and simply operated as a shell to hold title to the house in the United States.

Further, according to plaintiffs' jurisdictional allegations, San Pedro Impulsora currently has a bank account at Lone Star in Brownsville, Texas; however, the money in the account actually belongs to Doña Raquel. San Pedro Impulsora obtained title to the funds in the bank account through a series of fraudulent transfers, involving a fake promissory note and a fake lawsuit, without receiving a reasonably equivalent value.

San Pedro Impulsora does not dispute that it was created for the purpose of holding title to Texas land or that it did so. Further, San Pedro Impulsora does not counter the allegations regarding its acquisition of Doña Raquel's funds through a false promissory note and a sham lawsuit, or the fact that her funds were transferred from her bank account to San Pedro Impulsora's bank account in Mexico and, ultimately, to its bank account at Lone Star in Texas. Instead, San Pedro Impulsora essentially argues that all the alleged fraud took place in Mexico and the fact that the money ended up in a Texas bank account is not enough to hold it to jurisdiction here. For the reasons discussed below, we disagree with San Pedro Impulsora's arguments.

Without examining the evidence further, we conclude the foregoing is sufficient to hold San Pedro Impulsora subject to the jurisdiction of a Texas court.[11] Plaintiffs allege that San Pedro Impulsora is the transferee of a fraudulent transfer in violation of the Texas

---

[11] In considering the denial of a special appearance, we determine only the issue of jurisdiction and do not address the merits or liability. *See Michiana Easy Livin' Country Inc. v. Holten*, 168 S.W.3d 777, 791-92 (Tex. 2005); *Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 835 (Tex. App.–Houston [14th Dist.] 2008, pet. denied); *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 251 n.10 (Tex. App.–Houston [1st Dist.] 2004, pet. denied).

17

Uniform Fraudulent Transfer Act ("UFTA"). The UFTA provides, in part, that "[a] transfer . . . is fraudulent . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor; or without receiving a reasonably equivalent value in exchange for the transfer or obligation." TEX. BUS. & COM. CODE ANN. § 24.005(a)(1), (2); *see Retamco Operating, Inc.*, 278 S.W.3d at 341; *Trigeant Holdings, Ltd. v. Jones*, 183 S.W.3d 717, 726 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) (noting that "the UFTA not only creates liability against 'the person for whose benefit the transfer was made,' such as the debtor, but also against 'the first transferee of the asset,' or any 'subsequent transferee'").

Under a recent Texas Supreme Court case, being the recipient of a fraudulent transfer is sufficient to find jurisdiction:

> Republic is alleged to have received transfer of Texas real property from a Texas resident, during the pendency of a Texas suit, for the purpose of defrauding a Texas resident. As a result of this transaction, assets ROI may have recovered from Paradigm are now in the possession of Republic. These contacts are sufficient to demonstrate that this alleged tort occurred at least, in part, in Texas.

*Retamco Operating, Inc.*, 278 S.W.3d at 340-41 (internal citations omitted). Moreover, San Pedro Impulsora is alleged to have been created solely for the purpose of holding title to Texas property and did, in fact, hold Texas property belonging to Doña Raquel, the ward of a Cameron County guardianship proceeding. San Pedro Impulsora is alleged to have participated in a fraudulent lawsuit and promissory note to obtain funds from Doña Raquel. After a series of transactions, the funds' ultimate destination was the Lone Star account in Texas. These contacts are sufficient to demonstrate that this alleged tort occurred at least, in part, in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 ("a nonresident

18

does business in this state if the nonresident . . . commits a tort in whole or in part in this state"); *Retamco Operating, Inc.*, 278 S.W.3d at 340-41; *see also In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 725 (Tex. App.–Dallas 2005, orig. proceeding) (noting that a fraudulent transfer under the UFTA is a tort).

In Texas, personal jurisdiction may be found where a defendant takes part in any aspect of a tortious scheme that impacts Texas citizens, regardless of a defendant's other links to this State. *See Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 437 (Tex. 1982); *Mem'l Hosp. Sys. v. Fisher Invs.*, 835 S.W.2d 645, 650-51 (Tex. App.–Houston [14th Dist.] 1992, no writ) (commission of tort causing foreseeable economic injury in Texas sufficient to confer personal jurisdiction); *Gen. Elec. v. Brown & Ross Int'l*, 804 S.W.2d 527, 532 (Tex. App.–Houston [1st Dist.] 1990, writ denied) (participant in fraud scheme could anticipate subsequent litigation, therefore subject to personal jurisdiction); *Tex. Commerce Bank v. Interpol '80 Ltd. P'ship*, 703 S.W.2d 765, 771-72 (Tex. App.–Corpus Christi 1985, no writ) (participation in a project that aims to extract profit from Texas real estate will support specific jurisdiction); *see also Leben v. Treen*, No. 13-02-00309-CV, 2003 Tex. App. LEXIS 9338, at *10-11 (Tex. App.–Corpus Christi Oct. 30, 2003, no pet.) (mem. op.). When a party expects to profit from its activities in Texas and receives a benefit from Texas residents and Texas law, that party can reasonably assume that a Texas court might call. *Gen. Elec. Co.*, 804 S.W.2d at 532.

## B. FAIR PLAY AND SUBSTANTIAL JUSTICE

Under the second prong of the test for due process, a party opposing a non-resident defendant's special appearance must show that the exercise of personal jurisdiction

comports with fair play and substantial justice. *Int'l Shoe Co.*, 326 U.S. at 316 (1945). We therefore consider whether, despite the existence of minimum contacts, there are any reasons why our assertion of jurisdiction in this case would offend traditional notions of fair play and substantial justice. To defeat jurisdiction, San Pedro Impulsora must present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *See Guardian Royal*, 815 S.W.2d at 231.

San Pedro Impulsora contends that the burden of litigation in Texas weighs against exercising jurisdiction over San Pedro Impulsora because it is a Mexican corporation with no presence in Texas and litigation here would require the transportation of witnesses and necessary documentation. However, the fact that San Pedro Impulsora is headquartered in Mexico cannot, by itself, defeat jurisdiction. *See Spir Star AG*, 310 S.W.3d at 879; *Guardian Royal*, 815 S.W.2d at 231 ("Nor is distance alone ordinarily sufficient to defeat jurisdiction: 'modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.'" (quoting *McGee v. Int'l Life Ins.* Co., 355 U.S. 220, 223 (1957)). San Pedro Impulsora did not provide evidentiary support for its contention that litigating here would be an undue burden.

San Pedro Impulsora contends that Texas has no interest in adjudicating this dispute because it is a "dispute between Mexican residents arising from the settlement of a Mexican resident's estate." Although Texas's interest in adjudicating this dispute may not be as strong as in cases in which the plaintiff is from Texas and alleges injuries occurring in Texas, Texas nevertheless has an interest in litigating this dispute because this lawsuit directly concerns the property and estate of a resident ward of a Cameron

20

County, Texas probate court. *Cf. Asahi*, 480 U.S. at 114 ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished."); *Guardian*, 815 S.W.2d at 233 ("[S]ince Guardian Royal and U.S. Fire are neither Texas consumers nor insureds, Texas' interest in adjudicating the dispute . . . is considerably diminished."). Texas has an interest in adjudicating torts allegedly committed against the wards of its courts.

The third, fourth, and fifth factors to consider in determining whether the exercise of jurisdiction offends traditional notions of fair play and substantial justice—the plaintiffs' interest in obtaining convenient and effective relief, the international judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the two nations in furthering fundamental substantive social policies—also weigh in favor of maintaining jurisdiction over San Pedro Impulsora. Doña Raquel has an obvious interest in litigating her claim in the state where she resides, where the controversy has already been litigated, and where her funds are located. Further, nothing in the record suggests that Lone Star is amenable to the jurisdiction of a Mexican court; thus, litigating in Texas promotes the international judicial system's interest in obtaining efficient resolution of the plaintiffs' claims against San Pedro Impulsora and the other defendants in a single proceeding. We hold that San Pedro Impulsora has failed to present a "compelling case" that the presence of these other considerations would render jurisdiction "unreasonable." *See Guardian Royal*, 815 S.W.2d at 231. Therefore, the trial court did not err by denying San Pedro Impulsora's special appearance. Accordingly, we overrule San Pedro Impulsora's second issue.

21

San Pedro Impulsora alleges that the trial court erred in admitting the deposition and trial testimony offered by Ignacio, along with the settlement agreement, arbitration award, and various judgments entered during the Cameron County probate proceeding on the guardianship of Doña Raquel. San Pedro Impulsora also urges error in the admission of court orders from the Mexican legal proceeding.[12] San Pedro Impulsora urges that Ignacio's testimony constituted inadmissible hearsay and that the court orders were "irrelevant." In contrast, appellees urge that this testimony and evidence was admissible, inter alia, as an admission by a party-opponent. The evidence at issue largely supports the proposition that San Pedro Impulsora is a shell corporation controlled by Ignacio and used to appropriate and transfer title to Doña Raquel's assets. We note that much of this evidence is cumulative of the allegations in the plaintiffs' first amended petition, which were neither contradicted by San Pedro Impulsora nor countered by contrary evidence.

We have previously determined that jurisdiction was proper without considering any of the objected-to evidence. Nevertheless, we further conclude that the trial court did not abuse its discretion in considering such evidence. We review the admission or exclusion of evidence under an abuse of discretion standard. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). Thus, evidentiary rulings admitting or excluding evidence are committed to

---

[12] Judicial notice is mandatory when a party requests the court do so and the party supplies the court "with the necessary information." TEX. R. EVID. 201(d). A court may take judicial notice of the records in another court when it is provided with copies of those records. *See Brown v. Brown*, 145 S.W.3d 745, 750 (Tex. App.–Dallas 2004, pet. denied); *Surgitek, Inc. v. Adams*, 955 S.W.2d 884, 889 n.4 (Tex. App.–Corpus Christi 1997, pet. dism'd by agr.).

the trial court's "sound" discretion. *See Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. *City of Brownsville*, 897 S.W.2d at 754; *see also Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). We must uphold a trial court's evidentiary ruling if there is any legitimate basis in the record to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

For the exclusion of evidence to constitute reversible error, the complaining party must show that (1) the trial court committed error, and (2) the error probably caused the rendition of an improper judgment. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992); *see* TEX. R. APP. P. 44.1; *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). A person seeking to reverse a judgment based on evidentiary error need not prove that "but for" the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment. *State*, 302 S.W.3d at 870; *City of Brownsville*, 897 S.W.2d at 754; *McCraw*, 828 S.W.2d at 758. A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *Nissan Motor Co.*, 145 S.W.3d at 144. In making this determination, we review the entire record. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008); *Nissan Motor Co.*, 145 S.W.3d at 144. The exclusion or

23

admission is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment. *State*, 302 S.W.3d at 870.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Generally, relevant evidence is admissible unless otherwise made inadmissible by the Constitution, statute, the Texas Rules of Evidence, or other rules prescribed pursuant to statutory authority. *See id.* R. 402.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *See id.* R. 801(d). "Out-of-court statements are not hearsay if offered for a purpose other than to prove the truth of the matter asserted." *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992); *Ho Wah Genting Kintron Sdn Bhd v. Leviton Mfg. Co.*, 163 S.W.3d 120, 126 (Tex. App.–San Antonio 2005, no pet.).

In civil cases, testimony given by a witness at another hearing or deposition in the same or a different proceeding is not excluded as hearsay evidence if the party against whom the testimony is now offered, or a person with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. TEX. R. EVID. 804(b)(1). Admissions by party-opponents are also not hearsay if they are offered against a party and are either:

(A)    the party's own statement in either an individual or representative capacity;

(B)  a statement of which the party has manifested an adoption or belief in its truth;

(C)  a statement by a person authorized by the party to make a statement concerning the subject;

(D)  a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship; or

(E)  a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

*Id.* at R. 801(e)(2)(A)-(E). San Pedro Impulsora argues that it was not a party to the guardianship proceeding and thus did not have an opportunity and similar motive to develop Ignacio's deposition testimony. It further argues that Ignacio was no longer appellant's *administrator* when he gave the complained-of testimony because appellant had a new and different *administrator*.

Plaintiffs alleged that San Pedro Impulsora was a sham corporation controlled by Ignacio even when he did not serve as its *administrator*. Accordingly, the trial court may have considered Ignacio's deposition to be admissible as San Pedro Impulsora's statement in a representative capacity, that Ignacio was authorized to make such statements, or that Ignacio's deposition testimony concerned matters within the scope of Ignacio's agency or employment, made during the existence of the relationship. *See id.* R. 801(e)(2)(A), (C), (D). Moreover, the trial court may have admitted Ignacio's deposition testimony, and the exhibits thereto, as a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. *See id.* R. 801(e)(2)(E). Further, as noted previously, much of the content of the evidence at issue was cumulative. Accordingly, we conclude that the

25

trial court did not abuse its discretion in overruling San Pedro Impulsora's hearsay objection. We overrule San Pedro Impulsora's first issue.

## VI. CONCLUSION

Because San Pedro Impulsora engaged in minimum contacts with Texas sufficient to subject it to specific jurisdiction in a Texas court, and because the exercise of such jurisdiction would not offend traditional notions of fair play and substantial justice, we affirm the trial court's order denying the special appearance by San Pedro Impulsora.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 18th
day of November, 2010.