# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00786-CV
## NO. 03-12-00344-CV

**Charles J. Williamson, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY**
**NOS. C-1-CV-11-003819 & C-1-CV-11-008100**
**HONORABLE ERIC SHEPPERD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Charles J. Williamson appeals from final summary judgments in two related causes that we consolidated on his motion for purposes of briefing and argument. In Cause No. 03-12-00344-CV, Williamson appeals a summary judgment dismissing a bill-of-review claim through which he sought to challenge a 1997 default judgment holding him liable for unpaid promissory notes. In Cause No. 03-11-00786-CV, Williams appeals a summary judgment in an action garnishing his bank accounts to satisfy the 1997 judgment debt. We will affirm both judgments.

## BACKGROUND

On September 8, 1997, the State of Texas (State), acting on behalf of the Texas Higher Education Coordinating Board, obtained a default judgment against Williamson awarding the State approximately $19,800.00 in damages and $150 in attorney's fees for failure

to pay the balance due on several promissory notes made in connection with his student loans. In February 2009, the State initiated garnishment proceedings against Wells Fargo seeking to satisfy the judgment debt from several accounts that held funds allegedly belonging to Williamson. Events in the garnishment litigation eventually prompted Williamson to file an August 2011 petition for bill of review challenging the 1997 default judgment establishing the underlying debt. The State answered Williamson's bill-of-review petition and moved for summary judgment. Williamson neither filed a response nor attended the summary-judgment hearing.[1] Following the hearing, the trial court granted the State's motion for summary judgment and ordered that Williamson take nothing on his bill-of-review claim.

Meanwhile, in the garnishment litigation, the State and Wells Fargo had entered into an agreed final judgment in which the State recovered the balance of Williamson's accounts held by Wells Fargo to credit towards the 1997 default judgment, less $750 in attorney's fees to be paid to Wells Fargo.[2] Williamson filed a petition in intervention and motion to quash the writ. The trial court denied the motion to quash without addressing the merits of Williamson's arguments on the basis that Williamson had failed to timely set the matter for hearing. *See* Tex. R. Civ. P. 664a (noting that motion to vacate, dissolve, or modify writ of garnishment "shall be heard promptly . . . and the issue shall be determined not later than ten days after the motion is filed"). On appeal, the Seventh Court of Appeals (to whom the cause was transferred via docket equalization) held that Williamson's failure to timely set a hearing did not preclude the trial court from exercising

---

[1] In his briefing, Williamson asserts that he was unable to attend due to illness.

[2] That order was amended a few days thereafter to exclude a portion of the account funds that the State concluded were exempt veterans' benefits.

jurisdiction and that the trial court still had plenary power to consider the matter. *See Williamson v. State*, No. 07-09-00248-CV, 2010 WL 4644502, at *2 (Tex. App.—Amarillo Nov. 17, 2010, pet. struck) (mem. op.). The Seventh Court reversed and remanded the garnishment case to the trial court.

On remand to the trial court, Williamson disputed whether he had been properly served with the writ of garnishment. The State filed a second application for writ of garnishment again seeking judgment against Wells Fargo to satisfy the 1997 default judgment, and the court clerk issued the second writ on April 11, 2011. On April 28, 2011, the trial court held that the State had failed to properly serve the first writ of garnishment on Williamson and quashed the writ.[3] However, the trial court contemporaneously ordered that Wells Fargo would be discharged from the suit upon its deposit of the disputed funds into the trial court's registry. Wells Fargo answered the second garnishment suit on May 5, 2011. On June 2, 2011, the trial court consolidated the first and second garnishment cases and Wells Fargo, which had deposited the disputed funds into the court's registry, was discharged from the suit. Williamson thereafter filed a motion for sanctions, urging that the State's claims were frivolous.

On June 23, 2011, the State moved for summary judgment in the consolidated garnishment case. The State attached as exhibits to its motion bank statements from Wells Fargo detailing activity in Williamson's accounts, which the State analyzed to determine the portion of the funds that were exempt from garnishment. On the day before the summary-judgment hearing, Williamson filed, with leave of court and over the State's objection,[4] a response to the State's

---

[3] The invalidity of the first writ of garnishment is not disputed on appeal.

[4] *See* Tex. R. Civ. P. 166a(c).

motion. The trial court granted the State's motion and signed a final summary judgment on August 25, 2011.[5] The court awarded the State $3,885.02 and Wells Fargo $750 in attorney's fees, but returned $2,791.61 in exempt funds to Williamson.

As previously indicated, Williamson perfected separate appeals from the final summary judgments in both the bill-of-review and garnishment cases. On his motion, we consolidated the appeals for purposes of briefing and argument.

## ANALYSIS

In the bill-of-review case, Williamson, in substance,[6] complains principally that the trial court erred in granting summary judgment against him because the State did not establish as a matter of law that he was properly served in the 1997 default judgment proceeding. In the garnishment case, Williamson challenges the summary judgment on the basis that the trial court

[5] On the same date, Williamson filed a "Joint Motion for Summary Judgment and Motion for Attorney Fees, Damages, Costs, Expenses and Sanctions." Nothing in the record suggests Williamson obtained leave of court for this late filing, so we will presume that the trial court did not consider it. *See INA of Tex. v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1986); *Air Am. Jet Charter Inc. v. Lawhon*, 93 S.W.3d 441, 444 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (cross-motion for summary judgment filed without leave after trial court granted final summary judgment for opposing party presented nothing for appellate court to review).

[6] Williamson has appeared pro se at each stage of these proceedings. Although he apparently is a licensed attorney, the legal substance and materiality of many of his arguments are elusive. While we have attempted to liberally construe his arguments, we are bound to apply the same procedural and substantive standards to him as with other litigants. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978) ("There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves. Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel."). These standards include the rules governing error preservation in summary-judgment practice, which, as we detail below, are fatal to several contentions Williamson attempts to raise on appeal. To the extent Williamson is attempting to raise additional issues or arguments beyond those we have addressed, we conclude they are waived as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

4

lacked jurisdiction to act—specifically, to order Wells Fargo to deposit the disputed funds into the court's registry—after it dissolved the State's first writ of garnishment. Alternatively, Williamson asserts that even if the trial court had jurisdiction, it improperly calculated the garnishment award.[7]

**Standard of review**

We review the trial court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Knott*, 128 S.W.3d at 215-16. When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubt in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.

Under the traditional summary-judgment standard, which governs here, the movant has the initial burden of conclusively negating at least one essential element of a claim or defense on which the non-movant has the burden of proof or conclusively establishing each element of a claim or defense on which the movant has the burden of proof. *See* Tex. R. Civ. P. 166a(c); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once the movant has done so, and only if it does, the burden shifts to the non-movant to produce evidence creating a genuine issue of material fact as to the challenged element or elements in order to defeat the summary judgment. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). If a non-movant fails to present any issues in

[7] Williamson also filed a motion for "Summary Reversal and Rendering," which requests appellate relief based solely on what he claims to be the State's failure to timely file its appellee's brief. We overrule the motion.

his response or answer, the non-movant is limited on appeal to arguing the legal sufficiency of the grounds presented by the movant. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993).

**Bill of review**

In his petition for bill of review, Williamson asserted that the State failed to strictly comply with the rules of service in the original lawsuit to recover the balance of unpaid promissory notes, rendering the default judgment underlying the State's garnishment actions void. A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for a new trial or direct appeal. *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 812 (Tex. 2012) (per curiam). Ordinarily, a bill-of-review plaintiff must plead and prove: "'(1) a meritorious defense to the underlying cause of action, (2) which the plaintiff[] [was] prevented from making by the fraud, accident or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on [his] own part.'" *Id*. (quoting *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004) (per curiam)). Courts narrowly construe the grounds on which a plaintiff may obtain a bill of review due to Texas's fundamental public policy favoring the finality of judgments. *Id*. But when a bill-of-review plaintiff claims a due process violation based on lack of service or notice, he is relieved of proving the first two elements set out above. *Id*. (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84, 87 (1988); *Caldwell*, 154 S.W.3d at 96-97). And the third element, lack of negligence, is conclusively established if the bill-of-review plaintiff can prove he was never served with process. *See Caldwell*, 154 S.W.3d at 97; *see also Peralta*, 485 U.S. at 84, 87.

6

In its summary judgment motion challenging Williamson's bill-of-review claim, the State maintained that, as a matter of law, service was made in strict conformity with all applicable statutes and rules and requested that the court take judicial notice of its record and case file in the original lawsuit including the original petition, citation, return of citation by authorized person, and the Secretary of State's certificate of service.[8]

The State purported to serve Williamson under the Texas long-arm statute. *See* Tex. Civ. Prac. & Rem. Code §§ 17.041-.045.[9] In order to be entitled to a default judgment when service is made under the long-arm statute, the State was required to (1) plead facts which, if true, would make Williamson amenable to service under the long-arm statute and (2) present evidence that Williamson was in fact served according to the statute. *See Fields v. Klatt Hardware & Lumber, Inc.*, 374 S.W.3d 543, 549 (Tex. App.—San Antonio 2012, no pet.) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). In its original petition, the State pled facts showing that Williamson was a resident of Texas at the time the underlying promissory notes were made, but had since become a non-resident of Texas, then residing in Tennessee. Williamson conceded these facts in his bill-of-review petition.[10] Therefore, Williamson was amenable to service under the long-arm statute, and

---

[8] The State did not rely on limitations as a summary-judgment ground.

[9] As there have been no material or substantive intervening changes, we cite the most current version of the statute for convenience.

[10] Williamson argues on appeal that this was a misstatement. It is well settled that "assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions." *See Houston First Am. Savings v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983); *see also id.* ("Any fact admitted is conclusively established in the case . . . ."); *TX Far West, Ltd. v. Texas Invs. Mgmt., Inc.*, 127 S.W.3d 295, 307 (Tex. App.—Austin 2004, no pet.).

could be served through the Secretary of State. *See* Tex. Civ. Prac. & Rem. Code § 17.044(a)(3) ("The secretary of state is an agent for service of process or complaint on a nonresident who . . . is not required to designate an agent for service in this state, but becomes a nonresident after a cause of action arises in this state but before the cause is matured by suit in a court of competent jurisdiction."). Accordingly, the State need only have adduced evidence that Williamson was properly served through the Secretary of State.

Proof of service under the long-arm statute can be satisfied by a certificate from the Secretary of State. *Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 465 (Tex. 2004) (per curiam). Absent fraud or mistake, the Secretary of State's certificate is conclusive evidence that the Secretary of State, as Williamson's agent, received service of process for him and forwarded the service as required by the statute. *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986). Williamson provided a copy of the necessary certificate of service from the Secretary of State to the trial court as an exhibit included in a supplement to his bill of review.

We have reviewed the summary judgment record and conclude that the State established as a matter of law that it properly served Williamson via the long-arm statute. *See Fields*, 374 S.W.3d at 549. Having established each element of a claim or defense on which the State had the burden of proof, the burden then shifted to Williamson to produce evidence creating a genuine issue of material fact as to service in order to defeat the summary judgment. *See Walker*, 924 S.W.2d at 377. Williamson did not file a response attempting to do so.[11] Thus, the State was

---

[11] Although Williamson attempts to raise on appeal various grounds in opposition to summary judgment, we cannot consider them because he did not preserve them by filing a written response below. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

8

entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Science Spectrum, Inc.*, 941 S.W.2d at 911. We affirm the trial court's summary judgment that Williamson take nothing on his bill-of-review claim.

**Garnishment**

Garnishment is a statutory proceeding whereby property of the debtor (or defendant) that is in possession of the garnishee is applied to the payment of the debt owed by the debtor to the garnishor (also known as plaintiff or creditor). *National City Bank v. Texas Capital Bank, N.A.*, 353 S.W.3d 581, 584 (Tex. App.—Dallas 2011, no pet.) (citing Tex. Civ. Prac. & Rem. Code §§ 63.001–.008; Tex. R. Civ. P. 657–79). The garnishee is a third party who owes a debt to, or holds property of, the debtor. *Id*. The plaintiff or garnishor is a creditor of the debtor and requests the court to issue the writ of garnishment to the garnishee. *Id*. The only issue to be tried in a garnishment proceeding is who is entitled to the funds involved in the proceeding. *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 286 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (citing *Home Improvement Loan Co. v. Brewer*, 318 S.W.2d 673, 677 (Tex. Civ. App.—Dallas 1958, writ ref'd n.r.e.)). The rules of civil procedure require that the defendant be served with the writ in any manner permitted by Rule 21a, "as soon as practicable following the service of the writ." Tex. R. Civ. P. 663a; *see also* Tex. R. Civ. P. 21a (governing methods of

---

Williamson also appears to complain about the trial court's denial of a motion for continuance of the summary-judgment hearing in which he requested additional time for discovery and a protective order shielding the State from that discovery. On this record, we cannot conclude that the trial court abused its discretion in denying the continuance and granting the State protection from discovery. During a hearing on the motions, Williamson could not explain the need for his requested discovery and conceded that the court could "decide the case on the pleadings." He argued that he was "entitled" to discovery only because the State had served discovery on him and he had responded.

9

service).  An application for garnishment that does not comply with the requirements of the rules of procedure cannot serve as a basis for default judgment or summary judgment.  *El Periodico, Inc. v. Parks Oil Co.*, 917 S.W.2d 777, 779 (Tex. 1996) (per curiam).

In the garnishment case, Williamson asserts two complaints challenging the summary judgment against him:  (1) the trial court lacked "jurisdiction" to order Wells Fargo to interplead funds belonging to Williamson into the court's registry after it dissolved the State's first writ of garnishment, and (2) even if the trial court had "jurisdiction," it improperly calculated the amount of exempt and non-exempt funds in its final order.[12]

### *Validity of the writ*

In his first issue, Williamson contends that the entire garnishment action is void inasmuch as it is based on the first writ of garnishment that the trial court quashed for lack of proper service.  After the trial court quashed the first writ, he argues, it could take no other action than order that Wells Fargo immediately return the disputed funds to him.  By instead ordering Wells Fargo to deposit the funds into the court's registry, Williamson argues, the trial court "emasculat[ed] the protection that is intended to be afforded by TRCP 663a."  We disagree.

The State did not rely on the first writ of garnishment, which had been dissolved, in moving for summary judgment.  Instead, in its motion, the State stated that it applied for, and made an affidavit in support of, a second writ of garnishment against Wells Fargo in accordance with the statutes and rules governing post-judgment garnishment cases.  In an attached affidavit, the State

---

[12]  Williamson again attempts to raise additional grounds in opposition to summary judgment that he did not preserve by including in his response below.  We cannot consider them. *See McConnell*, 858 S.W.2d at 341; *Clear Creek Basin Auth*., 589 S.W.2d at 678.

10

averred that it served Williamson with the second writ of garnishment, the application for writ of garnishment, and affidavit in support by certified mail as required by the rules of civil procedure. *See* Tex. R. Civ. P. 663a. Williamson concedes that the State properly served the second writ.[13]

While the trial court had previously quashed the first writ of garnishment based on invalid service, that ruling did not, in itself, have any effect on the validity of service of the second writ, which the State served two weeks before the first writ was dissolved and two weeks before the court ordered Wells Fargo to deposit the disputed funds into the court's registry.[14]

Williamson concedes that a party may seek multiple writs of garnishment, but argues that the State "attempted to circumvent the full functioning of 663a by having a second garnishment issue before the trial court might be forced to return" his funds. However, the trial court did not have possession of the disputed funds when the State applied for the second writ of garnishment; they were still being held by Wells Fargo. Further, instead of "circumvent[ing] the full functioning of 663a," the evidence establishes that the State fully complied with 663a in obtaining the second writ.[15]

---

[13] In a footnote to his brief, Williamson raises several complaints regarding the State's compliance with rule 663a. We conclude that he waived these arguments by failing to present them to the trial court. *See McConnell*, 858 S.W.2d at 341.

[14] Williamson relies heavily on *Zeecon Wireless Internet, LLC v. American Bank of Texas, N.A.*, 305 S.W.3d 813, 820 (Tex. App.—Austin 2010, no pet.) in which we held that a trial court did not have authority to disburse portions of a debtor's property after it had dissolved a writ of garnishment for lack of proper service. The key distinction between the two cases is that after the *Zeecon* trial court dissolved the first writ, it had no further basis for jurisdiction to allow it to order distribution of the debtor's property. *See id.* at 819. In contrast, here, the trial court had jurisdiction pursuant to the second writ, which was filed and served prior to the order dissolving the first writ.

[15] We also note that, in light of the circumstances up to that point, Wells Fargo could have deposited the disputed funds into the court's registry on its own volition. *See Thompson v. Fulton Bag & Cotton Mills*, 286 S.W.2d 411, 414 (Tex. 1956) (holding that garnishee may pay funds into court and interplead other necessary parties in order to protect itself against double liability); *National City Bank v. Texas Capital Bank, N.A.*, 353 S.W.3d 581, 588 (Tex. App.—Dallas 2011,

11

Accordingly, we conclude that the trial court was authorized to order Wells Fargo to deposit the disputed funds into its registry, and the court's order dissolving the first writ had no effect on the validity of the second writ.[16] We overrule Williamson's complaints related to the second writ of garnishment.[17]

### Calculation of exempt and non-exempt funds

In its summary judgment order, the trial court concluded that a portion of the disputed funds were exempt from garnishment due to their status as veterans' benefits.[18] It ordered the exempted portion returned to Williamson and awarded the remainder to the State less attorney's fees to Wells Fargo. Williamson argues that the trial court was in error and that the entirety of the disputed funds should have been deemed exempt.

---

no pet.) (holding that "[t]o protect itself from double liability, the garnishee may interplead or withhold the funds from the debtor").

[16] Further, rule 664a expressly authorizes a court, upon dissolving a writ of garnishment, to issue orders concerning the disposition of the garnished property "as justice may require." *See* Tex. R. Civ. P. 664a; *Zeecon Wireless Internet*, 305 S.W.3d at 822–23 (discussing rule 664a in postjudgment proceeding). In light of the proper second writ, the trial court's order requiring Wells Fargo to deposit funds into the court's registry was within its discretion.

[17] Williamson also asserts that rule of appellate procedure 38.1(g) bars the State from "litigating matters that Appellant discussed" in his appellate briefing in his prior appeal, "but to which there was no response from State and, so, Appellant's position, going unchallenged, became uncontroverted fact." *See* Tex. R. App. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them."). We decline to read this rule as giving final preclusive effect to statements made in a prior appeal concerning separate issues.

[18] The Veterans' Benefits Act makes payments of benefits "made to, or on account of, a beneficiary . . . exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a).

In its summary-judgment motion, the State conceded that some portion of the disputed funds consisted of VA benefits. It further noted that Wells Fargo had answered that it was indebted to Williamson in the amount of $7,426.63.[19] The State employed tracing to determine whether the funds were properly characterized as exempt or non-exempt and relied on certain assumptions. Specifically, the State assumed that: (1) Williamson spent non-exempt funds prior to exempt funds; (2) exempt funds were transferred to savings whenever possible;[20] (3) the maximum amount of funds that can be characterized as exempt is the balance of an account on a given day; (4) the expenditure or withdrawal of exempt funds ends their status as such—funds deposited later of a different character (i.e. non-exempt) do not acquire exempt status as a result of being deposited into an account that previously contained exempt funds. Applying these assumptions, the State concluded that $4,635.02 was non-exempt and subject to garnishment while $2,791.61 was exempt.

Williamson challenges two of the State's underlying assumptions.[21] First, he argues that there is no basis for the assumption that he always transferred available exempt funds from the checking account into which VA benefits were deposited to his savings account. However, based on the State's evidence, it appears that this assumption resulted in a larger amount of funds being characterized as exempt and thus, it is unclear why Williamson takes issue with it. Further,

---

[19] On the date the first writ of garnishment was served on Wells Fargo, the bank was indebted to Williamson in the amount of $8,507.63. However, Wells Fargo released $1,081 back to Williamson; this amount is reflected on his statements as a "Legal Charge Reversal."

[20] Thus, the State assumed when Williamson made a transfer from the checking account into which his VA benefits were deposited to his savings account, any and all exempt money available was included in the transfer. The State indicated that this assumption resulted in "the maximum amount of funds being characterized as exempt on the date the writ of garnishment was served."

[21] Williamson conceded that the State's first and third assumptions were correct.

13

Williamson presented no evidence indicating that this assumption was improper or that it resulted in improperly classifying exempt funds as non-exempt.

Second, Williamson challenges the State's assumption that withdrawal of exempt funds from an account ends their status as exempt and that funds redeposited into an account cannot retain exempt status despite their prior withdrawal. He claims that he routinely transferred amounts back and forth among the three accounts and, despite these activities, the funds retained their exempt status as long as they were not transformed into any sort of permanent investment. *See Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159, 162 (1962). Williamson took the position that because he received over $8,600 in VA benefits in aggregate over the years, the entire amount of the disputed funds should be deemed exempt. As support, he claimed that the total amount in the three accounts never fell below the sum of VA benefits deposits, but the State disputed this assertion, and Williamson did not provide evidence that would support this claim.

Instead, Williamson attached to his response documents containing argument and analysis concerning the deposits of his VA benefits as well as what appear to be copies of bank statements for the checking account into which VA benefits were deposited. The thrust of his arguments concern whether or not Wells Fargo properly credited back two VA benefits payments he received in the months before his accounts were frozen pursuant to the first writ of garnishment.[22] All of the analysis rests on the assumption that all funds in the account are exempt because he had received over $8,600 in VA benefits in aggregate over the years. However, Williamson provides no evidence, other than the statements themselves, to support this assumption, and no evidence

---

[22] Evidence attached to the State's motion for summary judgment established that these two payments were credited back to Williamson in the form of a "Legal Charge Reversal."

14

to controvert the State's assumptions regarding the proper characterization of exempt and non-exempt funds.

After reviewing the evidence, we conclude that the State presented sufficient evidence to establish, as a matter of law, the amount of exempt and non-exempt funds, including a portion of exempt funds that were initially frozen and then returned to Williamson. Having done so, the burden then shifted to Williamson to produce some evidence creating a genuine issue of material fact as to the disputed funds. *See Walker*, 924 S.W.2d at 377. Having failed to do so, we conclude that the trial court did not err in calculating its award of exempt and non-exempt funds.[23]

**CONCLUSION**

We affirm the trial court's summary judgment.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: June 26, 2013

---

[23] Relatedly, Williamson argues that rule of civil procedure 677 prevents an award of attorney's fees for Wells Fargo. On the contrary, rule 677 allows a garnishee to recover its costs from a debtor. *See* Tex. R. Civ. P. 677 ("[W]here the answer of the garnishee has not been controverted and the garnishee is held thereon, such costs shall be taxed against the defendant . . . ."); *see also Zeecon Wireless Internet*, 305 S.W.3d at 823 n.4 (noting that term "costs" in rule 677 includes attorney's fees). Wells Fargo filed an uncontroverted answer, and was discharged from the case upon its deposit of the disputed funds into the trial court's registry. We conclude the trial court acted within its discretion in awarding Wells Fargo reasonable and necessary attorney's fees.

15