**NATIONAL CITY BANK, A Subsidiary of National City Bank Corporation, a Delaware Corporation, Appellant,**

v.

**TEXAS CAPITAL BANK, N.A., A National Banking Association, Appellee.**

No. 05–10–00028–CV.

Court of Appeals of Texas, Dallas.

Nov. 23, 2011.

Sean M. Whyte, Charles Christopher Groves, Andrew Omprakash Wirmani, David Lawrence Horan, Jones Day, Dallas, TX, for Appellant.

David M. O'Dens, Settle Pou, Dallas, TX, Stephen Way Shellenberger, Law Office of Stephen Way Shellenberger, P.C., Richardson, TX, for Appellee.

Before Justices MOSELEY, MARTIN RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice MOSELEY.

This is an appeal from a summary judgment in a garnishment action. After the garnishee, appellant National City Bank ("National City"), was served with the writ of garnishment, it liquidated the debtor's investment account and applied the proceeds (approximately $1.2 million) to pay the debtor's obligation to National City (approximately $1.1 million), and paid the remainder of the proceeds (almost $90,000) to the debtor. National City does not dispute it should have paid the remainder to the garnishor, appellee Texas Capital Bank ("Texas Capital"). However, Texas Capital asserted the writ of garnishment placed it in a priority position ahead of National City with respect to the investment account, and thus that it was entitled to collect the full amount of its judgment against the debtor (over $500,000) from National City. The trial court agreed, granting Texas Capital's cross-motion for summary judgment and denying National City's cross-motion.

National City appeals. In a single issue, it contends the trial court erred by granting summary judgment for Texas Capital because National City's interest in the Debtor's account was superior to the writ of garnishment and therefore, National City properly used funds in the account to pay a matured debt to itself before paying remainder on the writ. For the reasons discussed herein, we agree with National City. Therefore, we modify the trial court's judgment to: (1) deny Texas Capital's motion for summary judgment; (2) grant National City's cross-motion for summary judgment; and (3) award judgment for the difference paid to the Debtor after service of the writ. We affirm the trial court's judgment as modified.

### BACKGROUND

In 2005, Keith D. McKenzie ("Debtor") signed a promissory note establishing a $1,200,000 revolving line of credit with National City. In connection with this credit, Debtor signed a security agreement and pledged certain assets in an investment-portfolio account at National City as collateral for the line of credit. A later security agreement extended National City's security interest to all assets held in the investment account.[1] By the time this dispute arose, almost all of the line of credit had been utilized by Debtor.

Texas Capital obtained a default judgment against Debtor for over $500,000 on September 17, 2008. Texas Capital then filed this garnishment proceeding against National City and Debtor; it served both with the writ of garnishment through the

---

1. This account was subject to several limitations in the security agreement between the parties. In particular, Debtor was required to maintain a minimum market value for the assets in the account of $1.2 million and had only a limited right, prior to default, to withdraw cash dividends and interest payments from the account. The security agreement also gave National City complete control over the collateral and the investment account. Debtor signed this security agreement as trustee for a living trust in his name. The parties do not indicate that this difference is relevant to resolution of the dispute.

secretary of state on October 31, 2008.[2] On that date, Debtor's investment account at National City held assets valued at over $1,267,000, and he owed over $1,174,000 on the line of credit.

On November 7, 2008, Debtor instructed National City to liquidate the investment account and pay off the line of credit. National City did so on November 13, 2008. At Debtor's request, National City transferred the remaining balance of approximately $89,000 to Debtor. National City filed an amended answer to the writ of garnishment setting out these facts. Texas Capital challenged the answer through a controverting affidavit or traverse. *See* Tex.R. Civ. P. 673.

Both parties moved for summary judgment and the trial court granted Texas Capital's motion, denied National City's motion, and rendered judgment for Texas Capital against National City for the full amount of the judgment against Debtor. The trial court also denied National City's motion for new trial and to reconsider the summary judgment.

### STANDARD OF REVIEW

"When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex.2009). We render the judgment the trial court should have rendered. *Id.*

### APPLICABLE LAW

 A garnishment proceeding involves at least three parties: (1) the plaintiff (also known as the garnishor or creditor); (2) the defendant or debtor; and (3) the garnishee. The garnishee is a third party who owes a debt to or holds property of the debtor. The plaintiff or garnishor is a creditor of the debtor and requests the court to issue the writ of garnishment to the garnishee. Garnishment is a statutory proceeding whereby property of the debtor that is in possession of the garnishee is applied to the payment of the debt owed by the debtor to the garnishor. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 63.001–.008 (West 2008); Tex.R. Civ. P. 657–79; *Thompson v. Harco Nat. Ins. Co.,* 997 S.W.2d 607, 611 (Tex.App.-Dallas 1998, pet. denied), *overruled in part on other grounds by John v. Marshall Health Servs., Inc.,* 58 S.W.3d 738, 741 (Tex.2001) (per curiam).

 The garnishor is subrogated to the rights of the debtor against the garnishee and may enforce, against the garnishee, any rights the debtor could have enforced had he sued the garnishee directly. *See Thompson,* 997 S.W.2d at 611 (citing *Beggs v. Fite,* 130 Tex. 46, 106 S.W.2d 1039, 1042 (1937)). The garnishor, however, cannot acquire any greater rights against the garnishee than the debtor, himself, possesses. *See id.* (citing *Phoenix Ins. Co. v. Willis,* 70 Tex. 12, 6 S.W. 825, 830 (1888)).

 Where, as here, the garnishee's answer is controverted the case is then tried as other cases and a judgment will be issued according to the results of the trial. *See* Tex.R. Civ. P. 668, 674. The primary issue in a garnishment suit is whether the garnishee is indebted to, or has in its

---

2. The certificate from the secretary of state indicates National City's agent signed the return receipt for the mail on November 3, 2008. National City contends that due to a mistake by its employees, the writ was not noted on its computer system and the employees handling Debtor's account were not aware of the writ until some time later. However, National City does not dispute that the date of service is October 31, 2008.

possession effects belonging to the debtor. *See Buckeye Ret. Co. v. Bank of Am., N.A.,* 239 S.W.3d 394, 399 (Tex.App.-Dallas 2007, no pet.); *Putman & Putman, Inc. v. Capitol Warehouse, Inc.,* 775 S.W.2d 460, 463 (Tex.App.-Austin 1989, writ denied). The burden is on the garnishor to establish the amount of the debt owed to the debtor or the value of the property held by the garnishee. "If the garnishor's proof fails, he can of course recover nothing." *Putman,* 775 S.W.2d at 463 (citations omitted).

 Garnishment proceedings often involve competing claims to property that must be resolved by applying rules of lien priority. The general rule is that in a contest over rights or interests in property, the party that is first in time is first in right. *See AMC Mortg. Services, Inc. v. Watts,* 260 S.W.3d 582, 585 (Tex.App.-Dallas 2008, no pet.); *World Help v. Leisure Lifestyles, Inc.,* 977 S.W.2d 662, 668 (Tex. App.-Fort Worth 1998, pet. denied). Rights under a writ of garnishment are determined by priority in time, which itself is determined by service of the writ. *Small Bus. Inv. Co. v. Champion Int'l Corp.,* 619 S.W.2d 28, 30 (Tex.Civ.App.-Houston [1st Dist.] 1981, no writ). Service of the writ on the garnishee fixes a lien on the debtor's property or debts due him, *"subject to prior valid rights and liens against such property or debt."* *Hubbell, Slack & Co. v. Farmers' Union Cotton Co.,* 196 S.W. 681, 684 (Tex.Civ.App.-Beaumont 1917, writ ref'd) (quoting Cyclopedia of Law and Procedure) (emphasis added);

*United States v. Standard Brass & Mfg. Co.,* 266 S.W.2d 407, 408 (Tex.Civ.App.-Beaumont 1954, no writ). In garnishment proceedings, allowable claims that are prior in time are prior in right of payment. *See Frankfurt's Tex. Inv. Corp. v. Trinity Sav. & Loan Ass'n,* 414 S.W.2d 190, 192 (Tex.Civ.App.-Dallas 1967, writ ref'd n.r.e.).

## DISCUSSION

 National City's amended answer asserted a superior interest in the account assets pursuant to the note and security agreement with Debtor.[3] Texas Capital controverted the amended answer, alleging that after National City was served with the writ, it was not entitled to offset Debtor's account and was not entitled to release funds to him. Texas Capital prayed for judgment against National City for the full amount of the judgment against Debtor. Thus, issue was joined as to the competing claims to the assets in Debtor's account.

National City admits that the payment of the $89,000 to Debtor was void under section 63.003 and has offered to make Texas Capital whole as to that amount. We must determine whether the trial court erred by granting summary judgment in favor of Texas Capital for more than that payment.

National City's claim to the assets in the investment account is based on the note and security agreements with Debtor. Texas Capital's claim is based on service of the writ of garnishment on National City.

---

**3.** The amended answer alleged:

II. On October 31, 2008, Keith D. McKenzie, as Trustee for the Keith D. McKenzie Living Trust, had securities and funds deposited with Garnishee valued at $1,267,942.25. The deposits were pledged as security for a $1,200,000.00 Secured Line of Credit, $1,174,132.29 of which had been utilized.

. . .

IV. On November 7, 2008, Keith D. McKenzie requested that Garnishee liquidate his investment portfolio to pay off his commercial line of credit. As a result, Garnishee setoff the $1,174,132.29 owed by Keith D. McKenzie.

V. On November 19, 2008, Garnishee transferred the $89,748.12 remaining from the investment portfolio to a Chase account at Mr. McKenzie's request.

The summary judgment evidence establishes that National City's security interest in the assets arose prior to service of the writ of garnishment. The summary judgment evidence also shows the debt to National City was in default as a result of the default judgment against Debtor.[4]

National City had a prior security interest to Texas Capital's garnishment lien. Texas Capital presented no evidence or legal theory that would give it a greater right to the investment account than Debtor had. Because Debtor's right to the investment account was fully subject to National City's security interest, neither Debtor nor Texas Capital had any right to the account assets until National City's debt was paid.

The parties argue extensively about whether the National City had a right of setoff and whether the debt had matured at the time the writ was served. But the issue is not whether National City had a right of setoff but whether it had a prior lien position—and it is undisputed that it did. National City had a prior lien to secure payment of Debtor's debt of over $1.1 million. Only after that debt was paid did Debtor—and Texas Capital as garnishor—have any right to the assets in the account. Regardless of whether the debt had matured, National City had a prior

security interest to Texas Capital's garnishment lien.

Texas Capital acquired no greater rights through garnishment than the debtor had. *See Beggs,* 106 S.W.2d at 1042; *Hubbell, Slack,* 196 S.W. at 684. Thus when the writ was served, Texas Capital merely stepped into Debtor's shoes and—like Debtor—was subject to National City's prior lien on the account assets. *See San Felipe Nat. Bank v. Caton,* 668 S.W.2d 804, 805 (Tex.App.-Houston [14th Dist.] 1984, no writ).

The terms of the note and security agreement establish the limited rights Debtor held in the account. The security agreement required Debtor to maintain a minimum asset value in the account of $1.2 million, and, subject to that and other requirements, gave him only the limited right to withdraw cash dividends and interest payments from the account.[5] In a strained argument, counsel for Texas Capital claims the security agreement gave Debtor exclusive control of the funds in the account. Ignoring the section of Exhibit B on withdrawals, Texas Capital quotes part of the section giving Debtor the right to sell securities in the account, but omits the proviso in that same section requiring the proceeds of any sale be maintained in the account or delivered to National City to be applied to the debt.[6]

4. The note provides that any judgment rendered against any obligor in any judicial proceeding is an event of default giving National City the option to accelerate the maturity of the debt by giving written notice to Debtor.

5. Section 1.3 of the security agreement provides that except to the extent provided on Exhibit B, Debtor "will not accept, affect or permit, a Distribution or other withdrawal of any Collateral...." The "withdrawals" section of Exhibit B provides:

Limited Withdrawals permitted. Notwithstanding the security interest granted and control relinquished to Bank in the Agreement, but subject to the covenants contained in section 3 of the Agreement and any further restrictions contained in any account control agreement or other agreement by and among Grantor, Bank and Custodian, unless and until a Default occurs and Bank provides a Notice of Exclusive Withdrawal to Grantor and Custodian, Grantor shall have the right to accept the following Distributions of Collateral from the Subject Account or other Collateral: Income—cash dividends and interest payments....

6. The "trading" section of Exhibit B gives Debtor, subject to the covenants in section 3 of the agreement, the "right, at any time and

The trading section also gives Debtor the right to exercise account rights (such as stock voting rights), but the agreement specifically defines account rights to *exclude* any right of Debtor to collect or receive distributions. Thus, Texas Capital's exclusive control argument fails under the express terms of the very provisions it cites as support—any proceeds of the sales authorized by the trading section must be kept in the account or delivered to National City for application to the debt.

Texas Capital argues that National City violated the writ by transferring funds to itself and to Debtor after the date of service. National City recognizes that its payment of the $89,000 to Debtor was void under section 63.003.[7] The payment of the remaining assets in the account to satisfy Debtor's line of credit debt was not a payment to the defendant; it was done in recognition of National City's superior security interest in the account assets. Texas Capital contends that National City made the payment at Debtor's direction and not as an exercise of its security interest. But that fact does not extinguish the security interest; regardless of why National City paid the debt, Texas Capital's garnishment lien was subject to the security interest and nothing National City did prejudiced Texas Capital's rights as garnishor. *See Hubbell, Slack,* 196 S.W. at 684; *Caton,* 668 S.W.2d at 805.

Texas Capital does not argue that National City's security interest is invalid or unenforceable for any reason. Rather, it focuses on the garnishee's duty to hold funds or property belonging to the debtor until the trial court determines the priority of liens or ownership of the property. However, this duty does not change the existing rights of parties regarding the property. For example, if National City had held the assets in the account, the trial court would still have to determine the priority of National City's claim under its security agreement and Texas Capital's claim under its judgment and the writ of garnishment. The record establishes that National City has the superior claim and that Texas Capital cannot be in any better position under the writ of garnishment than Debtor.

from time to time, and by itself or through an investment manager of Grantor, to make entitlement orders and direct Custodian to

 (a) sell, buy, exchange or transfer securities and other financial assets in the Subject Account and any other Collateral in arm's length market transactions for fair consideration *provided* that all of the proceeds (including, without limitation, any cash received as, and any securities paid for out of, such proceeds), net after reasonable transactional expenses incurred in connection therewith, of any such sale or other disposition are either (i) maintained in cash or cash equivalents or used to purchase additional securities or financial assets of the types(s) checked below (as being permitted investments), which in any event shall continue to be maintained in the Subject Account and/or deemed part of the Collateral hereunder or (ii) promptly delivered to Bank for application to the Subject Debt; and

 (b) exercise Account Rights."

7. The writ of garnishment commands the garnishee "NOT to pay *to defendant* any debt or to deliver to him any effects, pending further order of this court." *See* TEX.R. CIV. P. 661 (emphasis added). Section 63.003 provides:

 (a) After service of a writ of garnishment, the garnishee may not deliver any effects or pay any debt *to the defendant.* . . .

 (b) A payment, delivery, sale, or transfer made in violation of Subsection (a) is void as to the amount of the debt, effects, shares, or interest necessary to satisfy the plaintiff's demand.

TEX. CIV. PRAC. & REM.CODE ANN. § 63.003 (emphasis added). Garnishment is an extraordinary remedy and the supreme court has held garnishment proceedings "cannot be sustained unless they are in strict conformity with statutory requirements." *Beggs v. Fite,* 130 Tex. 46, 106 S.W.2d 1039, 1042 (1937).

Texas Capital also argues that only the court issuing the writ can determine ownership of the funds held by the garnishee and the priority of liens against the funds. Certainly it is for the court to make the legal determination as to the rights of the parties in the funds or property held by the garnishee. *See Thompson v. Fulton Bag & Cotton Mills,* 155 Tex. 365, 286 S.W.2d 411, 414 (1956) (jurisdiction of court issuing first writ of garnishment "extended to a determination of the title to or ownership of funds held by the garnishee if title or ownership were doubtful or in dispute"). And a garnishee is at risk of double liability if it pays funds that the court later determines were rightfully subject to the garnishment writ. To protect itself from double liability, the garnishee may interplead or withhold the funds from the debtor. *See id.* However, if the garnishee pays funds to itself or a third party and the court later determines the garnishor had no right to those funds under the writ, the garnishor cannot complain that the transfer was done before and not after the court's determination. For example, the supreme court has recognized that a "bank served with a writ of garnishment may rely on its deposit agreements when determining to whom it is indebted." *Bank One, Texas, N.A. v. Sunbelt Sav., F.S.B.,* 824 S.W.2d 557, 557 (Tex. 1992) (per curiam).

In *Bank One,* Sunbelt had a writ of garnishment served on Bank One for a judgment against an individual. Bank One answered that it did not have any accounts or property of the individual, but it had an account for a related corporation. *Id.* at 558. After the writ was served and Bank One answered, the funds in the corporate account were withdrawn. *Id.* Sunbelt responded that the individual had commingled personal assets in the corporate account, but did not name the corporation as a judgment debtor. *Id.* This Court reversed a summary judgment for the garnishee, concluding the garnishor raised a material issue of fact as to the ownership of the funds in the corporate account. *Id.* The supreme court reversed and rendered judgment for the garnishee, stating a "garnishee bank is not indebted to a judgment debtor unless some form of deposit agreement creates a debtor-creditor relationship between the bank and the judgment debtor." *Id.* It also clarified its holding in *Thompson,* stating that there it was

> only addressing the scope of the jurisdiction of the court issuing the writ of garnishment when a garnishee chooses to pay into the court funds to which a third party holds nominal title. *Thompson* did not hold that the garnishee is required to pay into the court funds to which title is in a third party who is not named in the writ of garnishment. This is true even when there is a question of true ownership.

*Bank One,* 824 S.W.2d at 558.

Texas Capital argues that a garnishee paying funds or debts to the debtor after service of the writ "does so at its peril." *See Cohen v. Advance Imports, Inc.,* 597 S.W.2d 449, 452 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.); *Pure Oil Co. v. Walsh-Woldert Motor Co.,* 36 S.W.2d 802, 805 (Tex.Civ.App.-Texarkana 1931, writ dism'd w.o.j.). A garnishee may not ignore[8] a writ of garnishment for the named judgment debtor, but the peril devolves into liability only if the garnishee, after service of the writ and before its answer is due, prejudices the rights of the garnishor. *See Pure Oil Co.,* 36 S.W.2d at 805. Here,

---

8. There is no evidence here of intentional disregard of the writ, which would be enforceable by contempt, and we express no opinion on whether such evidence would change the outcome of this case.

National City recognizes that it must pay Texas Capital the $89,000 that it paid Debtor. But because Texas Capital's rights under the writ of garnishment were subject to National City's prior security interest in the account assets, Texas Capital cannot establish it was prejudiced in excess of that amount by National City's payment of the line of credit debt.

Because National City established its security interest arose prior to Texas Capital's garnishment lien, we need not address whether National City also had a right of setoff.[9] We also need not address Texas Capital's argument that Michigan law applies to the setoff issue under the terms of the note and security agreement, as this issue was not raised below and Texas Capital has not shown that Michigan law is in conflict with Texas law.

## CONCLUSION

Because Debtor was not entitled to more than the $89,000 National City admittedly paid him in violation of the writ of garnishment, Texas Capital was entitled to no more than that amount. Accordingly, the trial court erred by granting Texas Capital's motion for summary judgment and denying National City's cross-motion. We modify the trial court's judgment to: (1) deny Texas Capital's motion for summary judgment; (2) grant National City's cross-motion for summary judgment; and (3) render judgment for Texas Capital against National City for the amount of $89,748.12. We affirm the trial court's judgment as modified.

9. Even if National City did not have the right to setoff the debt against the assets in the account, Texas Capital's interest in the investment account would still be subject to the lien that existed when the writ was served.