COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| CIBANCO, S.A., INSTITUCION DE BANCA MULTIPLE, | § | No. 08-21-00115-CV |
| | § | Appeal from the |
| Appellant, | | |
| | § | 327th Judicial District Court |
| v. | | |
| | § | of El Paso County, Texas |
| JESUS M. TRILLO QUEZADA and MIRIAM RUBIO GARCIA, | § | (TC# 2021DCV0152) |
| Appellees. | | |

## **O P I N I O N**

This is an interlocutory appeal from the trial court's denial of the special appearance filed by appellant CIBanco, S.A., Institucion de Banca Multiple's (CIBanco). On appeal, CIBanco argues it neither has continuous and systematic contacts with Texas, nor did it waive or concede its special appearance objecting to the trial court's exercise of personal jurisdiction. We reverse and remand.

## I. BACKGROUND

CIBanco is a full-service banking organization incorporated under the laws of Mexico. Its principal place of business is in Mexico City. Employing over 2,700 employees, it operates multiple banking branches throughout Mexico. No offices or branches are in Texas. Moreover, it neither owns nor leases real property in Texas, nor owns subsidiary companies in the state. Finally,

CIBanco does not advertise or market its services in Texas. Nonetheless, to facilitate international trade for its banking customers, CIBanco maintains a correspondent bank account with Citibank, N.A. (Citibank). Generally, CIBanco's customers receive payments from U.S. trading partners via wire transfers made in U.S. dollars. Those transfers are deposited to CIBanco's correspondent account. On receipt of funds, CIBanco typically credits customer accounts in Mexican pesos for an equivalent amount of such wire transfers.

Appellees Jesus M. Trillo Quezada and Miriam Rubio Garcia, husband and wife, are residents of Texas who owned a timeshare property in Mexico. On January 13, 2021, Appellees filed an original petition against multiple defendants, none of whom are parties to this appeal.[1] Appellees alleged the named defendants were "fraudsters" who devised a scheme to steal their money, whereby they represented they could connect timeshare owners with "high paying buyers." Specifically, Appellees alleged defendants promised Appelles they would receive at least $95,000 in exchange for selling the last ten years of their forty-year timeshare.

Appellees further alleged that before they received the promised payment, defendants demanded deposits of "refundable" fees totaling $127,257.31, which they did provide, into two bank accounts portrayed as belonging to defendants. Appellees' petition described the accounts as follows: "either Citibank, N.A. bank account (supposed beneficiary name: CIBACO SA FFC TO CONSTRUMACRO, account no. 36888793), or a Banco Santander bank account (supposed beneficiary name: SALV AGUARDO DE BENEFICIOS, SA De CV, account no. 65507206757)." After discovering defendants had no intent of brokering their transaction, Appellees demanded the return of their deposits. Although promises were again made by defendants, Appellees claimed no refund has yet been received. Based on their factual allegations, Appellees asserted claims of

---

[1] The originally named parties include New York Twin Cities Power, Kansas Trust Company of America, Julieta Bravo, Ana Perez, Daniel de Leon, Alan Diaz, Tiffany Sullivan, and David Acker (the defendants).

common law fraud, statutory fraud, breach of fiduciary duty, conversion, theft liability, negligent misrepresentations, breach of contract, unjust enrichment, and money had and received. Appellees' petition also included a request for a temporary restraining order, a temporary injunction, and a permanent injunction, with such orders requiring defendants to immediately deposit all funds received from Appellees into the registry of the court.

A day after filing suit against defendants, Appellees applied for a pre-judgment writ of garnishment against Citibank, as garnishee, using the same case number and caption as their original petition. The application alleged, "[Citibank] is indebted to Defendants through a banking relationship in which Defendants are depositors in one of Garnishee's branches." Specifically, Appellees claimed they would show "defendants maintain the following bank account with Garnishee":

**CITIBANK, N.A.**
**Bank Account Number:** 36888793
**Bank Routing Number:** 021000089
**Alleged Name on Account:** CIBANCO SA
FFC TO CONSTRUMACRO SA DE CV

Referencing the underlying lawsuit filed against defendants, Appellees alleged they sought recovery of a debt of not less than $127,257.31. The application included a declaration of Appellee Jesus M. Trillo Quezada and copies of outgoing wire transfer requests from his Wells Fargo account to the two bank accounts identified by the original petition.

On January 15, 2021, the trial court signed a temporary restraining order (TRO) against defendants as well as an order authorizing issuance of a pre-judgment writ of garnishment against the Citibank account owned by CIBanco. The TRO ordered defendants to deposit all funds belonging to Appellees in their possession or control into the registry of the court and to file a statement under oath containing a list of all transactions, investments, purchases, and acquisitions

made with plaintiff's funds. The garnishment order garnished funds up to the maximum amount of $127,257.31.

Initially, Citibank filed an original answer to the writ of garnishment utilizing the same caption and case number as Appellees' lawsuit though it added its own name as garnishee to the caption. Citibank asserted two claims: first, it was not indebted to the two corporate defendants named in the suit; and second, it lacked sufficient information to conclusively determine whether it was indebted to the six individual defendants. As for the account belonging to CIBanco, it answered it had debited funds from the account in the amount of $127,257.13, as instructed by the court's order of January 15, 2021. Citibank denied each material allegation and demanded strict proof thereof by a preponderance of the evidence.

Days after Citibank answered, CIBanco filed two pleadings: a motion to vacate or dissolve garnishment and an original petition in intervention "for the limited purpose of vacating and dissolving the garnishment" issued against its Citibank account. Conforming to the actions of Appellees and Citibank, CIBanco used the same caption and case number of the underlying suit. In both pleadings, CIBanco asserted it did not waive its objection to lack of service of process, or to the trial court's lack of personal jurisdiction over it or its funds.

Subsequently, Appellees filed a first amended petition adding CIBanco as a named defendant to the underlying suit. Appellees asserted CIBanco voluntarily submitted itself to the jurisdiction of the court by intervening in the case. Responding to the amended petition, CIBanco filed a special appearance under TEX. R. CIV. P. 120a., objecting to the trial court's exercise of personal jurisdiction. Appellees later replied, asserting CIBanco had waived its objections to the trial court's jurisdiction; even so, the trial court could exercise specific jurisdiction over CIBanco.

4

The trial court soon held a hearing on CIBanco's special appearance receiving argument from both sides. CIBanco argued that neither general nor specific jurisdiction could be established, and additionally, its involvement in the ancillary, garnishment proceeding did not constitute a waiver of its special appearance or any of its objections to personal jurisdiction. In response, Appellees contended CIBanco had waived its special appearance by filing a petition in intervention and a motion to vacate prior to filing its special appearance; and, alternatively, that specific jurisdiction applied regardless of the waiver issue. After receiving supplemental briefing, the trial court denied CIBanco's special appearance. The written order did not specify any grounds for the court's ruling. This appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (permitting the interlocutory appeal of a denial of a special appearance).

## II.  STANDARD OF REVIEW AND BURDEN OF PROOF

Our determination of whether a trial court has personal jurisdiction over a defendant is a question of law which we review de novo. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex. 2007). But if factual disputes exist, we review the trial court's resolution of those dispute as well. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). When the trial court does not file findings of fact in ruling on a special appearance, as done here, all questions of fact are presumed to support the court's order. *Id.* When the trial court does not specify under what ground it exercised its authority to deny the special appearance, we may affirm the ruling under any applicable legal theory. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

"[S]pecial-appearance jurisprudence dictates that the plaintiff and the defendant bear shifting burdens of proof in a challenge to personal jurisdiction." *Kelly v. Gen. Interior Constr., Inc.,* 301 S.W.3d 653, 658 (Tex. 2010); *see also Haddad v. ISI Automation Intl., Inc.,* No. 04-09-

5

00562-CV, 2010 WL 1708275, at *4 (Tex. App.—San Antonio, Apr. 28, 2010, no pet.) (mem. op.). Initially, the plaintiff bears the burden to plead sufficient allegations to bring a nonresident defendant within the scope of the long-arm statute outlined by Texas. *Id.; see also BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). To meet this burden, the plaintiff does not need to detail all the theories or bases of personal jurisdiction upon which he relies; rather, the plaintiff needs only to plead allegations sufficient to bring the nonresident defendant within the province of the long-arm statute. *Huynh v. Nguyen,* 180 S.W.3d 608, 619 (Tex. App.—Houston [14th Dist.] 2005, no pet). Once the plaintiff meets this burden, the burden shifts to the defendant challenging jurisdiction through a special appearance. *Kelly,* 301 S.W.3d at 658; *BMC Software,* 83 S.W.3d at 793; *Haddad,* 2010 WL 1708275, at *4. The defendant must negate all bases of personal jurisdiction alleged by the plaintiff. *Kelly,* 301 S.W.3d at 658. A defendant can negate jurisdiction by showing the evidence is factually or legally insufficient. *Id.*

If, however, plaintiffs fail to meet their initial burden of pleading jurisdictional allegations, then a defendant can satisfy its burden by simply proving it is a nonresident. *Oryx Capital Int'l, Inc. v. Sage Apartments, L.L.C.,* 167 S.W.3d 432, 441 (Tex. App—San Antonio 2005, no pet.). If the defendant proves its nonresidency status or otherwise negates personal jurisdiction, then the burden returns to plaintiffs, who must show as a matter of law the trial court has personal jurisdiction over the defendant. *Id.*

### III. DISCUSSION

In a single, overarching issue that includes sub-issues, CIBanco asserts the trial court erred in denying its special appearance. By its two sub-issues, CIBanco more specifically asserts (1) Texas courts do not have personal jurisdiction over it because it has no continuous and systematic contacts with the state, and (2) its motion to intervene in an ancillary proceeding, asking to vacate

or dissolve a garnishment, did not constitute a waiver of its special appearance or its concession to the trial court's jurisdiction.

Because waiver is a dispositive issue, we address the second sub-issue first. We reach the first sub-issue only if no waiver is shown.

## A. Waiver of Special Appearance

CIBanco asserts that neither its motion to dissolve the garnishment order nor its petition in intervention waived its jurisdictional arguments. It contends its filings amounted to mere participation in an ancillary proceeding, not a general appearance in the underlying suit. Countering, Appellees argued CIBanco's petition in intervention and motion to vacate invoked the trial court's judgment and sought affirmative relief, and therefore, CIBanco made a general appearance.

A special appearance permits a nonresident defendant to object to personal jurisdiction in a Texas court. *See* TEX. R. CIV. P. 120a. Nonetheless, a nonresident defendant may be subject to personal jurisdiction in a Texas court if that defendant enters a general appearance. *Boyd v. Kobierowski*, 283 S.W.3d 19, 21 (Tex. App.—San Antonio, no pet.); *see also* TEX. R. CIV. P. 120. "A general appearance entered before a special appearance waives the special appearance ." *Boyd*, 283 S.W.3d at 21 (citing *Exito Elecs. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 304–05 (Tex. 2004)). A party waives a special appearance and enters a general appearance: (1) when it invokes the judgment of the court on any question other than the court's jurisdiction, (2) when it recognizes by its own acts that an action is properly pending, or (3) when it seeks affirmative action from the court. *Dawson–Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998); *Moore By & Through Moore v. Elektro-Mobil Technik GmbH*, 874 S.W.2d 324, 327 (Tex. App.—El Paso 1994, writ denied).

CIBanco asserts it did not enter a general appearance by entering the garnishment proceeding seeking to dissolve or vacate the garnishment order. CIBanco argues that Texas courts have found this type of intervention is limited and does not waive the right to a special appearance. Appellees respond by arguing that CIBanco waived its challenge to personal jurisdiction by seeking affirmative action from the court before obtaining a ruling on its special appearance.

In Texas, garnishment proceedings are governed by Chapter 63 of the Civil Practice and Remedies Code and Rules 657 through 679 of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 657–79; TEX. CIV. PRAC. & REM. CODE ANN. §§ 63.001–.008; *see also Zeecon Wireless Internet, LLC v. Am. Bank of Tex., N.A.*, 305 S.W.3d 813, 816 (Tex. App.—Austin 2010, no pet.). "Garnishment is a statutory proceeding whereby the property, money, or credits of a debtor in the possession of another are applied to the payment of the debt." *Bank One, Tex., N.A. v. Sunbelt Sav., F.S.B.*, 824 S.W.2d 557, 558 (Tex. 1992).

"A garnishment proceeding involves at least three parties: (1) the plaintiff (also known as the garnishor or creditor); (2) the defendant or debtor; and (3) the garnishee." *Nat'l City Bank v. Tex. Capital Bank, N.A.*, 353 S.W.3d 581, 584 (Tex. App.—Dallas 2011, no pet.). "The plaintiff or garnishor is a creditor of the debtor and requests the court to issue the writ of garnishment to the garnishee." *Id*. "The garnishee is a third party who owes a debt to or holds property of the debtor." *Id*. Because a debtor-creditor relationship arises when a customer places funds on deposit with a bank, it may serve as garnishee. *See Citizens Nat'l Bank of Dallas v. Hill*, 505 S.W.2d 246, 248 (Tex. 1974); *Hudnall v. Tyler Bank & Tr. Co.*, 458 S.W.2d 183, 186 (Tex. 1970). Primarily, a garnishment proceeding determines whether the garnishee is indebted to or has in its possession effects belonging to the debtor. *Buckeye Ret. Co., LLC, Ltd. v. Bank of Am., N.A.*, 239 S.W.3d 394, 399 (Tex. App.—Dallas 2007, no pet.).

8

A garnishment action is an ancillary proceeding. *See Park v. W. Union Fin. Servs., Inc.*, No. 03-08-00292-CV, 2009 WL 3486373, at *2 (Tex. App.—Austin 2009, no pet.) (mem. op.) ("A garnishment action is not an original suit, but an ancillary proceeding that takes its jurisdiction from the underlying suit."). Typically, an appearance in ancillary proceedings does not subject the appearing party to the court's general jurisdiction. *Carey v. State*, No. 04-09-00809-CV, 2010 WL 2838631, at *3 (Tex. App.—San Antonio July 21, 2010, pet. denied) (mem. op.) ("Texas courts have also recognized that appearing in matters ancillary and prior to the main suit does not constitute a general appearance in the main suit and will not waive a plea to the jurisdiction.").

Here, CIBanco contends that a motion to dissolve or petition in intervention are proper procedure for a non-party to vacate or dissolve an improper garnishment. *See* TEX. R. CIV. P. 664a ("A defendant whose property or account has been garnished or any intervening party who claims an interest in such property or account, may file a motion to dissolve or modify the writ of garnishment the order directing its issuance, or both for any grounds or cause, extrinsic or intrinsic."). Relying on this procedural rule, CIBanco asserts that neither the motion to vacate or dissolve the garnishment, nor the petition in intervention constituted a general appearance.

In response, Appellees nonetheless assert that CIBanco should have filed a special appearance prior to filing a motion to dissolve the garnishment. Because it did not, they contend CIBanco failed to comply with mandatory requirements of TEX. R. CIV. P. 120a, thereby waiving its objection to the trial court's exercise of personal jurisdiction. CIBanco replies that Appellees misread the limitation included in the text of Rule 120a, wherein it states, "a special appearance may be made by *any party* . . . ." TEX. R. CIV. P. 120a [Emphasis added]. CIBanco contends it was not a party to the lawsuit when the trial court issued the order leading to the garnishment of funds from its account. As a non-party of the suit, CIBanco asserts it could not file a special appearance

at that time. We agree with that reading of Rule 120a. But the question becomes whether CIBanco's actions nonetheless constituted a general appearance in the suit.

Texas courts have weighed in on the type of action constituting a general appearance. Appearing in matters ancillary and prior to the main suit do not qualify as such. For example, agreeing to a Rule 11 agreement or collateral order, filing a writ of mandamus or motion for emergency relief, and agreeing to the extension of a temporary restraining order or temporary injunction will not constitute a general appearance. *See Grynberg v. M-I L.L.C.*, 398 S.W.3d 864, 878 (Tex. App.—Corpus Christi–Edinburg 2012, pet. denied) (collecting cases). Moreover, sending discovery requests is not enough, on its own, to waive a special appearance. *Minucci v. Sogevalor, S.A.*, 14 S.W.3d 790, 800 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (holding discovery did not constitute a waiver of special appearance and, although defendant's discovery requests attempted to elicit evidence to support its motion to dissolve the writ of garnishment and not grounds raised by plaintiff to defeat the special appearance, that Rule 120a does not limit discovery matters relating to the special appearance); *see also* TEX. R. CIV. P. 120a.

However, in considering surrounding circumstances, courts typically find that a defendant makes a general appearance when it seeks affirmative relief or otherwise invokes action from the trial court. *See Kaufman v. AmeriHealth Lab., LLC*, No. 05-20-00504-CV, 2020 WL 6375336, at *5 (Tex. App.—Dallas Oct. 30, 2020, no pet.) (mem. op.) (holding defendant's conduct during the beginning of a TRO hearing, considered in context of the present record, amounted to a general appearance); *Schoendienst v. Haug*, 399 S.W.3d 313, 321–22 (Tex. App.—Austin 2013, no pet.) (holding that defendant entered a general appearance through conduct in agreeing to the temporary injunction at issue but notes the analysis is dependent upon particular facts because there can be circumstances where a defendant's agreement to a temporary injunction will not constituted the

sort of recognition of the court's jurisdiction that amounts to an appearance); *Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 803 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding defendant waived his special appearance by seeking affirmative relief from the court through a motion to dismiss and motion for summary judgment, all before the trial court heard and determined his special appearance).

Accordingly, our analysis here hinges on the specific circumstances of the case and actions taken by CIBanco relative to the suit. Looking to the substance of its pleadings, CIBanco asserted it was intervening for the limited purpose of moving to vacate or dissolve the garnishment pursuant to Rule 664a of the Texas Rules of Civil Procedure and "without waiving its objections to lack of service of process or this Court's jurisdiction." Appellees argue CIBanco sought affirmative relief because its motion sought to establish it was the true owner of the account, the garnishment was improper, and the trial court should dissolve the garnishment. We disagree. Based on these pleadings, the only relief CIBanco sought was limited in reach and solely related to the garnishment proceeding, which is well-recognized as being an ancillary matter. CIBanco's requests were not inconsistent with its special appearance, and in fact, it expressly maintained the trial court lacked personal jurisdiction.

In this instance, CIBanco's actions were not the type that constituted "stepping outside the role of observer or silent figurehead and participating in the hearing," or taking action "inconsistent with the assertion that the trial court lacked jurisdiction[.]" *See Kaufman*, 2020 WL 6375336, at *4. CIBanco did not agree to anything affecting the merits of the case, or "[subject itself] to a court order that restricted [its] personal freedom and ability to deal with [its] property and finances in anticipation of trial on the merits." *Cf. Schoendienst*, 399 S.W.3d at 320–21, 315 (holding defendant made a general appearance where defendant agreed without qualification to the

11

temporary injunction which stated the plaintiffs would probably prevail at trial and imposed restraints on defendants' conduct). Furthermore, CIBanco did not agree to or argue against any issues at the core of the lawsuit. *Cf. Kaufman*, 2020 WL 6375336, at *4 (holding defendant made a general appearance by voluntarily appearing through counsel at the TRO hearing, successfully modifying the terms of the TRO, and arguing against plaintiff's underlying breach of contract claim).

Even so, Appellees claim CIBanco voluntarily became a party to the pending lawsuit by filing a petition in intervention. Relying on authority from the San Antonio Court of Appeals, Appellees argue, "[a]n intervention is an equitable motion filed by a nonparty voluntarily seeking to become a party in a pending suit to protect the nonparty's own rights." *See In re H.G.*, 267 S.W.3d 120, 122 n.1 (Tex. App.—San Antonio 2008, pet. denied). But we find the case inapposite to the circumstances presented here. As CIBanco points out, our sister court of appeals found in that case that the subject pleading, styled as an intervention, was in fact an original suit given there was no pending suit in which the parties could intervene. *Id*. at 122.

Of note, the Texas Rules of Civil Procedure require a writ of garnishment be separately docketed. *See* TEX. R. CIV. P. 659 (providing that after prerequisites of an application for garnishment have been met, "the clerk . . . shall docket the case in the name of the plaintiff as plaintiff and of the garnishee as the defendant . . ."). But here, the garnishment action initiated by Appellees was not so docketed. Instead, Appellees application for a writ of garnishment was filed under the same case number as their original suit. Acknowledging this error, Appellees cite to a case where the court held there was no harm in proceeding with a garnishment action in the same case number. *See Cloughly v. NBC Bank-Seguin, N.A.*, 773 S.W.2d 652, 658 (Tex. App.—San Antonio 1989, writ denied). There, the court found the validity of the judgment was not affected.

12

*Id.* But even if we assume such docketing error was harmless, we must still decide whether such error otherwise altered the ancillary nature of the proceeding itself. In this instance, had Appellees filed their garnishment application in a separate proceeding as ordinarily required, CIBanco's responsive actions would no doubt have been taken in a separate case apart or ancillary to the main suit.

Most recently, the Supreme Court of Texas reiterated that a misfiling of a motion for new trial under an original docket number, when it should have been filed under a new case number, should not be construed as leading to a material difference in the outcome of the case absent a showing of prejudice. *Mitschke v. Borromeo*, 645 S.W.3d 251, 262 n.20 (Tex. 2022). Consequently, in that case, the Supreme Court found the timely filed notice of appeal that was docketed under the wrong case number did not deprive the court of jurisdiction. *Id*. Indeed, in more recent decades, courts of appeals are instructed not to be constrained by the form or caption of a pleading, but rather apply a functional approach. *Surgitek v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999). Recognizing the distinction between the main suit and an ancillary proceeding regardless of docket number, we hold CIBanco's actions in both moving to dissolve the garnishment order, and in petition to intervene in the garnishment proceeding itself functioned, in substance, not as a general appearance in the main lawsuit, but merely as a response to the courts' garnishment of funds in its account. Said differently, but for the docketing error made either by Appellees or the clerk, the ancillary nature of the separate proceeding would have remained intact. *See Park, Inc.*, 2009 WL 3486373, at *2; *Carey*, 2010 WL 2838631, at *3. Because CIBanco limited its actions to merely addressing the garnishment order before it had been   brought in as a party to the main suit, we hold it did not waive its special appearance simply by taking such actions in the same case number.

Sub-issue one is sustained.

## B. Personal Jurisdiction

Having concluded CIBanco did not waive its special appearance, we next consider the first sub-issue. CIBanco argues the trial court erred in denying its special appearance on the merits.

### 1. Standard of Review

Whether the trial court had personal jurisdiction over a defendant is a question of law. *Am. Type Culture*, 83 S.W.3d at 805–06. We apply a de novo review to the trial court's decision to grant or deny a special appearance, but if a factual dispute exists, we review the trial court's resolution of the factual dispute as well. *Id.* at 806; *see also BMC Software*, 83 S.W.3d at 794. When, as here, the trial court does not file findings of fact in a special appearance, all questions of fact are presumed to support the judgment. *Am. Type Culture*, 83 S.W.3d at 806. When the trial court does not specify under what ground it was exercising its authority to deny the special appearance, we may affirm the judgment under any applicable legal theory. *Worford*, 801 S.W.2d at 109.

### 2. Applicable law

A Texas court may exercise personal jurisdiction over a nonresident defendant when doing so is permitted by the Texas long-arm statute and the exercise of jurisdiction is consistent with federal and state due-process guarantees. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016); *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (long-arm statute). Under the long-arm statute, a nonresident is present in Texas for purposes of personal jurisdiction when the nonresident is doing business in the state. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; *Kerlin v. Sauceda*, 263 S.W.3d 920, 927 (Tex. 2008). Doing business in this state includes certain acts by a

nonresident such as: "(1) contract[ing] by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state" and "(2) commit[ting] a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1), (2).

The long-arm statute extends a Texas court's personal jurisdiction but only as far as the federal constitutional requirement of due process will permit. *See Moki Mac*, 221 S.W.3d at 575. A Texas court can exercise jurisdiction over a nonresident defendant only if "(1) the defendant has established 'minimum contacts' with the state and (2) the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *TV Azteca*, 490 S.W.3d at 36 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities in the forum state invoking the benefits and protections of its laws. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). Purposeful availment is the "touchstone" of jurisdictional due process. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). To determine whether a nonresident defendant availed itself of the benefits of Texas law, we look to (1) the relevant contacts of the defendant, not the unilateral activity of another party or a third person; (2) whether the contacts are purposeful rather than random, fortuitous, isolated, or attenuated; and (3) whether the defendant seeks some benefit, advantage, or profit by availing itself of the jurisdiction. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013). The purposeful availment test focuses on the defendant's efforts to avail itself of the forum, not on the form of the cause of action chosen by the plaintiff. *Moki Mac*, 221 S.W.3d at 576. The minimum-contacts requirement protects due-process rights by permitting a state to exercise jurisdiction over a nonresident

15

defendant only when the defendant "could reasonably anticipate being haled into court there." *Moncrief Oil*, 414 S.W.3d at 152.

A nonresident defendant's minimum contacts may give rise to two types of personal jurisdiction: general and specific. *TV Azteca*, 490 S.W.3d at 37. If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017) (such contacts essentially render the defendant "at home" in the forum state). This test requires "substantial activities within the forum" and presents "a more demanding minimum contacts analysis than for specific jurisdiction." *BMC Software*, 83 S.W.3d at 797. When the requisite level of activities in the forum are established, a court may exercise jurisdiction even if the cause of action did not arise from activities performed in the forum state. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010). In contrast, when specific jurisdiction is alleged, the minimum-contacts analysis focuses on the "relationship among the defendant, the forum, and the litigation." *Moki Mac*, 221 S.W.3d at 575–576 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991)). Specific jurisdiction is triggered only "if the defendant's alleged liability 'arises out of or is related to' an activity conducted within the forum." *Id.* at 576 (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

### 3. Analysis

#### a. General jurisdiction

On appeal, CIBanco first asserts it has no continuous and systematic contacts with Texas to support the trial court's exercise of general jurisdiction. By uncontested evidence, CIBanco established it is a Mexican bank with its principal place of business in Mexico City. It is neither

headquartered nor incorporated in Texas. Rather, CIBanco is "a full-service Mexican banking organization organized and existing under the laws of Mexico" with "no employees, agents, offices, branches, or operations in Texas." Appellees do not contest these factual assertions. Beyond asserting that CIBanco waived its objection to personal jurisdiction by entering a general appearance, Appellees present no argument contending that the court may exercise general jurisdiction over CIBanco.

We conclude CIBanco is not "at home" in Texas and therefore, Texas courts do not have general jurisdiction over CIBanco. *See M & F Worldwide Corp.*, 512 S.W.3d at 885.

### b. *Specific jurisdiction*

CIBanco secondly asserts Texas courts have no specific jurisdiction over it because it has made no purposeful contacts with Texas related to Appellees' lawsuit. In its first amended petition, whereby Appellees added CIBanco as a defendant, they asserted the court had jurisdiction over defendants generally "because the Defendants conduct business in the State of Texas." Appellees further alleged CIBanco voluntarily submitted itself to the jurisdiction of the court by intervening in the case, which we addressed earlier in this decision. Lastly, Appellees alleged the Citibank account in which deposits were initially transferred turned out to be owned by CIBanco, who, "upon information and belief, is either involved in the time share scam conspiracy, or [CIBanco] allowed its employees, officers, directors, agents, or other persons or entities associated with it, herein named as Defendants John Does 1-10, to commit the fraud against Plaintiffs, and is jointly and severally liable to Plaintiffs for the wrongful acts of Defendants John Does 1-10." Relevant to this allegation, Appellees argued in the hearing below that deposits were made in an El Paso bank and later transferred to Citibank, which operated in Texas, and based on those deposits, CIBanco

17

eventually received funds in its account. Appellees argued that CIBanco's receipt of funds which were "scammed" from them gave rise to the trial court's specific jurisdiction.

In briefing, Appellees contend that based on the reasoning in *San Pedro Impulsora de Inmuebles Especiales, S.A. de C.V. v. Villarreal*, 330 S.W.3d 27, 40 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.), CIBanco's contacts are sufficient to demonstrate an alleged tort occurred in part in Texas. In *San Pedro Impulsora*, the court found that allegations of specific jurisdiction were sufficient because the nonresident defendant, a Mexican corporation, had not contested that it was created for the purpose of holding title to Texas land, that it had acquired funds through a false promissory note and sham lawsuit, and funds were transferred to it from a bank account in Mexico to one in Texas. *Id.* at 40. Instead, the nonresident corporate defendant contended that fraud took place in Mexico and the fact that money ended up in a Texas bank account was insufficient to hold it to jurisdiction in Texas. *Id.* The court disagreed, concluding as follows:

> Moreover, San Pedro Impulsora is alleged to have been created solely for the purpose of holding title to Texas property and did, in fact, hold Texas property belonging to Doña Raquel, the ward of a Cameron County guardianship proceeding. San Pedro Impulsora is alleged to have participated in a fraudulent lawsuit and promissory note to obtain funds from Doña Raquel. After a series of transactions, the funds' ultimate destination was the Lone Star account in Texas. These contacts are sufficient to demonstrate that this alleged tort occurred at least, in part, in Texas.

*Id.* at 41. We conclude, however, that S*an Pedro Impulsora* is distinguishable. Here, Appellees asserted no allegations of CIBanco owning property in Texas or otherwise alleging it was created for the sole purpose of holding title to Texas land.

Additionally, through the declaration of Juan Carlos Montaño de la Peña, its Chief Operating Officer and International Treasurer, CIBanco negated Appellees jurisdictional allegations that it had conducted business in Texas. In his declaration, de la Peña attests that the

18

Citibank account is a correspondent bank account, it is not situated in Texas, and CIBanco does not target the Texas market. He further attested as follows:

> A main purpose of a correspondent account is to facilitate international trade and foreign exchange. It is normal for CIBanco's Mexican business customers to receive payments from their U.S. trading partners via wire transfers in U.S. dollars to CIBanco's correspondent account. Once a payment for the benefit of a CIBanco customer is received into the correspondent account, CIBanco typically credits its Mexican customer for an equivalent amount of Mexican pesos and disburses that amount to the customer in Mexico.

Relevant to the alleged claims, de la Peña attested there was no record of Appellees or any of the named defendants of the suit being a CIBanco customer. Instead, de la Peña confirmed that Construmacro was a customer of the bank and its records showed "Mr. Trillo sent three wire transfers for the benefit of Construmacro." Only three payments totaling $25,676.31, were identified between Appellees and Construmacro. He continued:

> After confirmation that Citibank had deposited the transfers into CIBanco's correspondent account, CIBanco disbursed the equivalent amount of the funds, in Mexican pesos, to its customer in Mexico. The funds were disbursed in November and December 2020. CIBanco no longer holds the proceeds of Mr. Trillo's wire transfers to Construmacro because CIBanco already has disbursed the funds as part of CIBanco's ordinary course of business.

Lastly, de la Peña attested that it is not in the business of selling or purchasing time shares in Mexico or elsewhere.

Appellees' allegations asserting they deposited funds into their own bank account, which then resulted in a wire transfer of funds into an account utilized by CIBanco but belonging to an unnamed defendant, are insufficient to constitute purposeful availment in Texas. *See Bell*, 549 S.W.3d at 564 (holding that allegations of alleged fraudulent transfers of fungible assets are not viewed the same as the fraudulent transfer of Texas-based business operations and real property). Further, under our specific jurisdiction inquiry, we only consider the relevant contacts of the defendant with the forum state, not the unilateral activity of another; and even still, those contacts

19

must be purposeful, not random, fortuitous, isolated, or attenuated. *See Moncrief Oil*, 414 S.W.3d at 151. Appellees' allegation of depositing money into their own account, which later resulted in a transfer of funds to CIBanco's account, is insufficient alone to confer jurisdiction. As courts are cautioned, "[j]urisdiction cannot turn on whether a defendant denies wrongdoing—as virtually all will. Nor can it turn on whether a plaintiff merely alleges wrongdoing—again as virtually all will." *Michiana*, 168 S.W.3d at 791. The mere act of accepting the transfer of money drawn on a Texas bank is "of negligible significance for purposes of determining whether [a foreign defendant] had sufficient contacts in Texas." *Bell*, 549 S.W.3d at 564. Thus, even if CIBanco's receipt of funds into their correspondent account were part of a fraudulent scheme, this contact alone failed to establish purposeful availment of the state of Texas. We conclude that CIBanco negated any allegations of the existence of minimum contacts with Texas. Accordingly, the trial court erred in denying the special appearance.

We sustain CIBanco's first-sub issue.

## IV.  CONCLUSION

For the above reasons, we reverse the trial court's order denying CIBanco's special appearance. We remand the cause to the trial court for severance and dismissal of the claims asserted against CIBanco by Appellees Jesus M. Trillo Quezada and Miriam Rubio Garcia, and for further proceedings consistent with this opinion.

GINA M. PALAFOX, Justice

November 22, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.

20